SCHAEFER ET AL., APPELLEES, *v.* ALLSTATE INSURANCE COMPANY, APPELLANT..

NATIONWIDE MUTUAL INSURANCE COMPANY, APPELLEE,
*v.* FALLON-MURPHY ET AL., APPELLANTS.

[Cite as *Schaefer v. Allstate Ins. Co.* (1992), 63 Ohio St.3d 708.]

(Nos. 91–764 and 91–1042, and Nos. 91–2105 and 91–2333—
Submitted February 11, 1992—Decided May 27, 1992.)

*McCarthy, Palmer, Volkema & Becker* and *Robert G. Palmer,* for appellees in case Nos. 91–764 and 91–1042.

*Lane, Alton & Horst, Rick E. Marsh* and *Jeffrey S. Ream,* for appellant in case Nos. 91–764 and 91–1042.

*Thompson, Hine & Flory* and *Jack F. Fuchs,* urging affirmance for *amicus curiae,* Druetta Freeman, in case Nos. 91–764 and 91–1042.

*Enz, Jones & LeGrand, Grey W. Jones* and *Sheila M. Sinno,* for appellee in case Nos. 91–2105 and 91–2333.

*Matan & Smith* and *Eugene L. Matan,* for appellants in case Nos. 91–2105 and 91–2333.

DOUGLAS, J.

## I

*Schaefer et al. v. Allstate Ins. Co.*

Case Nos. 91–764 and 91–1042

In determining that its decision was in conflict with *Trupp, supra, Said, supra,* and *Roen, supra,* the court of appeals requested that we answer the following questions:

"(1) whether a binding arbitration clause in an automobile insurance policy providing that an award not exceeding the limits of the Financial Responsibility Law of Ohio will not be subject to a trial *de novo,* is so fundamentally unfair as to be unconscionable; and

"(2) what effect a finding of unconscionability will have upon enforcement of an award made under a binding arbitration clause."

Before answering either certified question, we discuss several other matters which will help to clarify the issues presented in this case.

## A

### Arbitration

In reviewing the questions presented to us for resolution, the policy provisions at issue and the various decisions of the courts which have, before us, pronounced judgments on these matters, we find that the real problem lies in the imprecise use of the term "arbitration." "Binding arbitration" is a redundancy. "Nonbinding arbitration" is a contradiction in terms. For a dispute resolution procedure to be classified as "arbitration," the decision rendered must be final, binding and without any qualification or condition as to the finality of an award whether or not agreed to by the parties. The decision may only be questioned pursuant to the procedure set forth in R.C. 2711.13 on grounds enumerated in R.C. 2711.10 and 2711.11. This is so even if a qualification on the finality of the award is mutually agreed to by the parties. When parties agree to make an award rendered in an "arbitration" procedure appealable, the proceeding is no longer an "arbitration."

A number of our cases decided over the course of many years reflect this court's dedication to the strong public policy favoring arbitration. See, *e.g., Brennan v. Brennan* (1955), 164 Ohio St. 29, 57 O.O. 71, 128 N.E.2d 89, paragraph one of the syllabus; *Mahoning Cty. Bd. of Mental Retardation v. Mahoning Cty. TMR Edn. Assn.* (1986), 22 Ohio St.3d 80, 22 OBR 95, 488 N.E.2d 872; and *Findlay City School Dist. Bd. of Edn. v. Findlay Edn.*

*Assn.* (1990), 49 Ohio St.3d 129, 551 N.E.2d 186. Arbitration is favored because it provides the parties thereto with a relatively expeditious and economical means of resolving a dispute. As we stated in *Mahoning, supra,* at 83, 22 OBR at 98, 488 N.E.2d at 875, arbitration " * * * provides the parties with a relatively speedy and inexpensive method of conflict resolution and has the additional advantage of unburdening crowded court dockets." Given the favored status of the arbitration system of dispute resolution in this state, it is important to understand what is meant by the term "arbitration."

A definition for the term "arbitration" can be derived from a number of sources. In *Ohio Council 8, AFSCME v. Ohio Dept. of Mental Health* (1984), 9 Ohio St.3d 139, 142, 9 OBR 388, 391, 459 N.E.2d 220, 222, we defined "arbitration" as a proceeding for the hearing and *determining* of a dispute between parties in controversy by a person or persons chosen by the parties *instead* of by a judicial tribunal. In *Mahoning, supra,* we stated that "[a]rbitration occurs when disputing parties contractually agree to *resolve* their conflict by submitting it to a neutral third party for *resolution.*" (Emphasis added.) *Id.,* 22 Ohio St.3d at 83, 22 OBR at 98, 488 N.E.2d at 875. Black's Law Dictionary (6 Ed.1990) 105, defines "arbitration" as:

"A process of dispute *resolution* in which a neutral third party (arbitrator) renders a decision after a hearing at which both parties have an opportunity to be heard. Where arbitration is voluntary, the disputing parties select the arbitrator who has the power to render a *binding* decision.

"An arrangement for taking *and abiding by* the judgment of selected persons in some disputed matter, *instead of carrying it to established tribunals of justice,* and is intended to avoid the formalities, the delay, the expense and vexation of ordinary litigation." (Emphasis added.)

Additionally, reference to treatises on the arbitration system of dispute resolution provides insight into the general meaning of the term "arbitration." For instance, it has been stated by one expert on the arbitration system of dispute resolution that:

"The function of arbitration is to destroy disputes. * * *

"An arbitration is a *final* determination of the respective claims or rights of the parties in controversy on the basis of proofs. Other forms of settlement may dispose of the disputes without these rights being determined or proofs being submitted, *or a final adjudication being made.* Arbitration is not this kind of a proceeding.

" * * *

"Arbitration * * * actually destroys the cells that cause the dispute by a final determination of whatever claims these cells of controversy give rise to.

It goes deep into the causes, sifts the facts and, unhampered by legal technicalities, sees that justice is administered. This use of arbitration has established the principle that only the administration of justice *finally* and *fully* destroys a dispute.

"The fact that arbitration is *final*, expeditious, private and inexpensive puts it in a class by itself, for while other processes may possess some of these characteristics, they rarely possess all of them—especially *finality. For it is only in arbitration that arbitration law accords the high privilege of giving the decision of an arbitrator the same legal effect as a judgment of the court.*

"The purpose of arbitration is, therefore, to determine a difference or dispute amicably, privately and *finally and, in so doing, to exclude a court of law from such determination.* * * * " (Emphasis added.) Kellor, Arbitration in Action (1941), at 3–4.

Other treatises are equally instructive. Professor Martin Domke, in his treatise on commercial arbitration, states that arbitration " * * * is based on a voluntary agreement of the parties, made before the arbitration process is instituted, to submit a dispute for the *binding* decision of the arbitrator." (Emphasis added.) Domke, The Law and Practice of Commercial Arbitration (1968) 3, Section 1.02. Similarly, it has been said that one of the defining characteristics of the arbitration system of dispute resolution is that it results in a *final* and *binding* disposition of a controversy or dispute. Oehmke, Commercial Arbitration (1987) 15, Section 2:1.

The General Assembly has also provided some guidance as to the meaning of the term "arbitration." In R.C. Chapter 2711, the General Assembly has not only provided that agreements to *settle* a controversy by arbitration are valid, *irrevocable*, and enforceable,[2] but that a court may, upon motion,[3] confirm an arbitrator's award[4] and, thus, reduce the award to judgment.[5] Additionally, the General Assembly has provided that an arbitrator's award may, upon motion,[6] be modified, corrected, or vacated only under certain conditions,[7] which conditions represent the rarest of circumstances. A review

---

2. See former R.C. 2711.01.

3. See R.C. 2711.09.

4. *Id.*

5. See R.C. 2711.12.

6. See R.C. 2711.13.

7. See R.C. 2711.11 (modification and correction) and R.C. 2711.10 (vacating award).

of these sections of R.C. Chapter 2711 clearly indicates that arbitration is intended to be an alternate method of dispute resolution which is *final* (and must be accorded finality) in all circumstances except those specifically set forth in the statute. Further evidence of the intended effect of the arbitration system of dispute resolution can be found in amended R.C. 2711.21(C), which adds confusion by permitting "nonbinding arbitration" of certain claims. While "nonbinding arbitration" is an oxymoron, R.C. 2711.21 also implies that other relevant provisions of R.C. Chapter 2711 pertain to a method of dispute resolution which is to be given final and binding effect.

With the foregoing discussion in mind, we believe that the policy provision at issue in this case, which provision provides that an "arbitration" award is binding if below a designated amount, but nonbinding if it exceeds such amount, does not provide for the "arbitration" of disputes as we have heretofore understood that term. While the provision purports to make an award binding in some instances, "arbitration" of a dispute, by definition, requires that the dispute be submitted to a neutral and independent "arbitrator" for a decision which is final and binding *regardless of the outcome.*

## B

### Policy Provisions

We gather from the record before us which is, at best, less than a model of clarity, that the automobile insurance policy which was originally issued to appellees by appellant contained the following arbitration provision:

"If any person making claim hereunder and Allstate do not agree that such person is legally entitled to recover damages from the owner or operator of an uninsured automobile because of bodily injury to the insured, or do not agree as to the amount of payment which may be owing under this coverage, then, upon written demand of either, the matter or matters upon which such person and Allstate do not agree shall be settled by arbitration in accordance with the rules of the American Arbitration Association, and judgment upon the award rendered by the arbitrators may be entered in any court having jurisdiction thereof. Such person and Allstate each agree to consider itself bound and to be bound by any award made by the arbitrators pursuant to this coverage."

This provision clearly provided a dispute resolution procedure which was "arbitration." Any decision rendered by the arbitrators would be final and binding.

We also glean from the information which has been provided to us that sometime after the issuance of the policy, but before the 1985 automobile

accident, the arbitration provision was amended (by an "endorsement") and that the amendment is applicable in this case. However, the parties have presented us with differing versions of the amendment,[8] and both parties are apparently confused concerning its effect upon the original arbitration provision contained in the policy. Specifically, in merit briefs submitted to this court, both parties cite the original arbitration provision contained in the policy claiming that the dispute between them concerning the cause of appellees' injuries was *required* to be submitted to arbitration. The parties then cite to their respective versions of the amendment regarding the binding effect of the panel's award.

We believe that the obvious purpose and effect of either version of the amendment was to completely replace the terms of the original arbitration

---

8. Appellant claims that the amendment contained the following language:

"If the person insured or we don't agree on that person's right to receive any damages or the amount, then upon the written request of either the disagreement will be settled by arbitration. Arbitration will take place under the rules of the American Arbitration Association unless the person insured or we object.

"If either party objects, the following alternative method of arbitration will be used. The person insured will select one arbitrator and we will select another. The two arbitrators will select a third. If they can't agree on a third arbitrator within 30 days, the judge of the court of record in the county of jurisdiction where arbitration is pending will appoint the third arbitrator. The written decision of any two arbitrators will determine the issues. Regardless of the method of arbitration, any award not exceeding the limits of the financial responsibility law of Ohio will be binding and may be entered as a judgment in a proper court.

"Regardless of the method of arbitration, when any arbitration award exceeds the Financial Responsibility limits of the State of Ohio, either party has a right to trial on all issues in a court of competent jurisdiction. This right must be exercised within 60 days of the award. Costs, including attorney fees, are to be paid by the party incurring them."

Appellees claim that the amendment provides:

"If the insured person or we don't agree on that person's right to receive any damages or the amount, then upon the mutual consent of the insured person and Allstate, the disagreement may be settled by arbitration. The insured person and we must mutually agree to arbitrate the disagreements. If the insured person and we do not agree to arbitrate, then the disagreement will be resolved in a court of competent jurisdiction.

"Unless the insured person or we object, arbitration will take place under the rules of the American Arbitration Association. If either party objects, the following alternative method of arbitration will be used. The insured person will select one arbitrator and we will select another. The two arbitrators will select a third. If they can't agree on a third arbitrator within 30 days, the judge of the court of record in the county of jurisdiction where arbitration is pending will appoint the third arbitrator. The written decision of any two arbitrators will determine the issues.

"Regardless of the method of arbitration, any award not exceeding the limits of the Financial Responsibility law of Ohio will be binding and may be entered as a judgment in a proper court.

"Regardless of the method of arbitration, when any arbitration award exceeds the Financial Responsibility limits of the State of Ohio, either party has a right to trial on all issues in a court of competent jurisdiction. This right must be exercised within 60 days of the award. Costs, including attorney fees, are to be paid by the party incurring them."

provision contained in the policy with the verbiage of the amendment so that the terms of the original provision were no longer applicable. This conclusion is supported by the fact that both versions of the amendment set forth a comprehensive procedure for the hearing of claims and the appealability of awards. The language of both versions of the amendment is inconsistent with, or repetitive of, or both, of *all* relevant terms of the original arbitration clause contained in the policy. Therefore, the parties are clearly incorrect in relying upon the *original* arbitration provision contained in the policy in representing to us that "arbitration" was *required* in this case.

In any event, the relevant portion of the amendment which is at issue here provides that an arbitration award not exceeding the limits of Ohio's financial responsibility law is binding upon the insurer and the insured, but that an award exceeding such limits is nonbinding and the issues between the parties may be tried *de novo* in a court of competent jurisdiction. From other cases pending before us and those cited to us as being in conflict, it is apparent that similar provisions have been added by endorsement to many automobile insurance policies throughout the state with the effect of modifying the arbitration provision of the underlying or basic policy of automobile insurance. It is also apparent that similar provisions have been written into many basic policies of automobile insurance issued in this state.

Accordingly, a simple analysis of the policy provision now before us based upon our discussion of "arbitration" in Part I A, *supra,* leads to the inevitable conclusion that whatever alternative-dispute-resolution procedure is provided for, that procedure is *not* arbitration. The procedure does *not* make *any* and *all* awards final and binding. Furthermore, it is apparent that the insurance provision in question here represents a clear attempt to bypass R.C. Chapter 2711 by setting up an "escape hatch" for any party disappointed with an award exceeding a specified amount. In doing so, the provision completely frustrates the purposes of "arbitration" and every public policy reason favoring the arbitration system of dispute resolution. By permitting a trial *de novo* in some instances, the provision unnecessarily subjects the parties to multiple proceedings in a variety of forums, increases costs, extends the time consumed in ultimately resolving a dispute, and eviscerates any advantage of unburdening crowded court dockets. Accordingly, since the provision is *not* a provision providing for true arbitration, the entire agreement to "arbitrate" clause is unenforceable.

In reaching the above conclusion, we have also reviewed the decisions of the highest courts in several of our sister states. See *Mendes v. Automobile Ins. Co. of Hartford* (1989), 212 Conn. 652, 563 A.2d 695; *Schmidt v. Midwest*

*Family Mut. Ins. Co.* (Minn.1988), 426 N.W.2d 870; and *Pepin v. American Universal Ins. Co.* (R.I.1988), 540 A.2d 21. Additionally, we have noted Justice Sweeney's analysis of a similar insurance provision in his often-cited concurring opinion in *Nationwide Mut. Ins. Co. v. Marsh* (1984), 15 Ohio St.3d 107, 110–111, 15 OBR 261, 263–264, 472 N.E.2d 1061, 1063–1064.

Finally, in concluding this portion of our discussion, it is important to note that the courts of appeals in *Said, supra,* and *Roen, supra,* cited our decision in *Ohio Council 8, supra,* to support the proposition that parties are free to contract not to be bound by an arbitrator's decision. We move now to dispel any notion that *Ohio Council 8* supports the proposition that parties may agree to "nonbinding arbitration." In *Ohio Council 8,* we clearly distinguished between "arbitration" on the one hand and "mediation" on the other hand, and our decision in that case does *not* support the proposition for which it was cited in *Said, supra,* and *Roen, supra.*

## II

### *Nationwide Mut. Ins. Co. v. Fallon–Murphy*

### Case Nos. 91–2105 and 91–2333

In today deciding that policy provisions like the one before us herein are unenforceable, we are keenly aware that our decision cuts both ways. The *Fallon–Murphy* case was also certified to us by the Tenth District Court of Appeals. It is now pending before us both on an allowance of a motion to certify the record (case No. 91–2105) and upon certification of conflict (case No. 91–2333).

*Fallon–Murphy* involves a policy provision that is, in all material respects, the same as the provision at issue in the case at bar. A dispute between the insurance carrier, appellee Nationwide Mutual Insurance Company, and its insureds, appellants Janie Fallon–Murphy and Michael Murphy, was submitted to "arbitration." The arbitration panel awarded the policyholders over $1,000,000. Exercising its right under the policy provision, the carrier "appealed" the award and sought a trial. The policyholders moved for summary judgment contending that the clause permitting the carrier to "appeal" was "unconscionable" and against public policy. The trial court granted summary judgment to the insureds and held against the insurance company. The carrier appealed and the Tenth District Court of Appeals reversed the trial court and found that portion of the clause permitting appeal if the award exceeded the Ohio limits of financial responsibility to be valid and enforceable.

In deciding as we have today that such provisions like the one now before us do not, by their own terms, constitute an arbitration provision, the carrier in *Fallon–Murphy* had an absolute right to seek a determination of the issues by a court of competent jurisdiction and, thus, the judgment of the court of appeals is, for that reason, affirmed. The policyholders lose their "arbitration" award and will be required to go to trial.

While the sword has two edges, all parties are treated equally. If parties want to arbitrate, a practice we strongly encourage, then the rules are clear as to the requirements. An award rendered in an arbitration proceeding is final and binding since the parties have freely entered into such an agreement. Short of this, the procedure is *not* arbitration and either party has the right to have the issues heard at a trial regardless of the amount of an award.

## III

### *Conclusion*

We have determined that an insurance provision like the one at issue is violative of the policy of this state favoring arbitration as an alternative method of dispute resolution. An award rendered pursuant to "arbitration" is final and binding—otherwise, the proceeding is not arbitration. Our response to the first certified question in *Schaefer, supra,* is that a provision or an endorsement in a policy of automobile insurance which provides that any award not exceeding the limits of the financial responsibility law of Ohio is binding, but is nonbinding if the award exceeds such limits, is not "arbitration" and is, therefore, unenforceable as such.[9]

Given our conclusion that the provision is unenforceable, our specific response to the second certified question is that whether the invalid provision is contained in the policy of insurance, or whether the provision has been added to the policy by way of endorsement to modify an otherwise enforceable arbitration clause, the insurer and insured(s) are left with no valid alternative-dispute-resolution procedure and either party may seek access to the courts for the settlement of their disputes.

For the reasons stated herein, rather than those advanced by the appellate court, we affirm, in case Nos. 91–764 and 91–1042, the judgment of the court of appeals. For like reasons, we affirm the judgment of the court of appeals

---

9. We specifically reject appellant's argument that the Federal Arbitration Act, Section 1 *et seq.*, Title 9, U.S.Code requires a different result. Ohio's statutory framework for the enforcement and modification of arbitration awards governs the dispute resolution procedure of arbitration in Ohio. See R.C. 2711.01 *et seq.*

in case Nos. 91–2105 and 91–2333. Our decisions permit all parties to now pursue their claims in the trial court.

*Judgment affirmed*
*in case Nos. 91–764*
*and 91–1042.*

*Judgment affirmed*
*in case Nos. 91–2105*
*and 91–2333.*

SWEENEY and RESNICK, JJ., concur.

MOYER, C.J., WRIGHT and H. BROWN, JJ., concur in judgment only.

HOLMES, J., dissents.

WRIGHT, J., concurring in judgment only. A plurality of this court has, *sua sponte*, taken this case as an opportunity to pronounce law on an issue neither briefed by the parties nor discussed by any court below. Although I am not troubled by the end result achieved by the plurality, I am disturbed by the "law" the plurality gratuitously pronounces in reaching its decision. Accordingly, I concur in the judgment only.

I

I am somewhat fascinated to learn that the plurality considers "nonbinding arbitration" to be an oxymoron and "binding arbitration" to be a redundancy. Not only will this be news to the parties in these cases, the trial courts and the courts of appeals below (not to mention the whole of the Ohio judiciary), it will no doubt come as a surprise to the General Assembly, which has used one or both of the terms "binding" and "nonbinding" to modify arbitration in no fewer than ten sections of the Ohio Revised Code.[10] Indeed, I am curious

---

10. See R.C. 153.63(B) (" * * * The arbitration [of a dispute concerning a contractor escrow account] shall be binding on all parties."); R.C. 179.01(B)(1) (defining a "dispute resolution and conflict management program" as " * * * including but not limited to * * * nonbinding arbitration * * * "); R.C. 306.12 (authorizing any county transit board to negotiate certain arrangements which may include " * * * provisions for the submission of labor disputes to final and binding arbitration"); R.C. 306.35(X) (authorizing similar arrangements for the board of a regional transit authority); R.C. 2711.21(A) (providing for nonbinding arbitration of a medical, dental, optometric or chiropractic claim upon filing of such claim and agreement of the parties); R.C. 2711.22 (providing for enforcement of a written contract between a physician or hospital and a patient to settle disputes by binding arbitration); R.C. 2711.24 (specifying the arbitration agreement form to be used for binding arbitration of medical claims); R.C. 4117.09(B)(1) (providing that a written collective bargaining agreement between state employers and employ-

how, under the plurality's formulation, one would construe R.C. 2711.21—a section that provides for *nonbinding* arbitration of a medical, dental, optometric or chiropractic claim upon filing of such claim and subsequent agreement of the parties, and that explicitly acknowledges the parties' rights to contract for *binding* arbitration over the same type of claim. In my view, the narrow construction of the term "arbitration" advocated by the plurality adds nothing to the development of the law. Indeed, it detracts from a widely accepted construction of that term.

The term "arbitration" simply describes a process in which a neutral third party renders a decision on an issue or case in dispute after a hearing during which the disputants are given an opportunity to be heard. Black's Law Dictionary (6 Ed.1990) 105. "Mediation," on the other hand, is a "[p]rivate, informal dispute resolution process in which a neutral third person, the mediator, helps disputing parties to reach an agreement. * * * " *Id.* at 981. Unlike the arbitrator, "[t]he mediator has no power to impose a decision on the parties." *Id.*

Contrary to the assertions of the plurality, the degree to which parties agree to be bound by an arbitrator's decision flows not from the incantation of the word "arbitration," but rather from the parties' intent as expressed through an arbitration agreement. The public policy of this state does not preclude parties from agreeing to bring before an arbitrator or panel of arbitrators, prior to the initiation of litigation, a particular set of issues or disputes that may arise between them, or from agreeing further that each party will retain the right to disregard any decision reached through arbitration and seek relief in court in a trial *de novo*. To the contrary, as evidenced by the passage of R.C. Chapter 179, the promotion of nonbinding arbitration as one of a panoply of alternative dispute resolution techniques is presently favored public policy in our state.

Although an arbitrator's decision under an agreement for nonbinding arbitration, even if accepted by the parties, may not be enforceable under R.C. Chapter 2711, see *Ohio Council 8, AFSCME v. Ohio Dept. of Mental Health* (1984), 9 Ohio St.3d 139, 9 OBR 388, 459 N.E.2d 220, it nevertheless may be enforceable as a matter of contract law if, after the decision is rendered, the

---

ees shall contain a provision for a " * * * grievance procedure which may culminate with final and binding arbitration of unresolved grievances, and disputed interpretations of agreements * * *"); R.C. 4117.10(A) (specifying that where a grievance procedure under a public employees' collective bargaining agreement provides for final and binding arbitration of grievances, such grievances are not appealable to the State Personnel Board of Review or civil service commissions); and R.C. 5126.23(H) (providing that a county board of mental retardation and developmental disabilities and certain of its employees may agree to submit to binding arbitration issues regarding the removal, suspension, or demotion of such employees).

parties agree to abide by it, thus waiving their rights to proceed to litigation. Additionally, the existence of a valid agreement to arbitrate, whether that agreement provides for binding or nonbinding results, should provide a trial court, pursuant to R.C. 2711.02 or 2711.03, with the authority to stay a suit or proceeding brought upon an issue that would be arbitrable under that agreement, or to directly compel arbitration under the arbitration agreement.

Unlike the plurality, I believe the public policy of this state reflects a growing desire to have parties attempt to resolve their disputes before seeking a juridical solution to their problems, even if the only step they have agreed upon is arbitration that they can disregard if they choose. In contrast to mediation, where the parties are guided to solve their problems on their own, arbitration provides the parties with a definitive view by a neutral third party of the merits of their conflict, after a full hearing that can include testimony under oath, R.C. 2711.06, and the use of depositions, R.C. 2711.07. In the case of nonbinding arbitration, the salutary effects of such a procedure far outweigh any perceived need for finality that the plurality equates with the use of the term "arbitration."

Accordingly, if the issue were properly presented to the court, I would hold that an agreement that provides for nonbinding arbitration will be enforced to the extent possible under the law, and the parties will be held to their agreement to arbitrate unless the agreement is unconscionable or otherwise revocable as a matter of law or equity. Thus, with the exception of the provisions of the Revised Code which concern the issuance, enforcement, modification, or vacation of, as well as judgment upon or appeal from an arbitration *award,* none of which is relevant in the context of nonbinding arbitration,[11] I would construe the remaining provisions liberally to include nonbinding arbitration within their scope. See Comment to R.C. 2711.01 (supporting a liberal construction).

## II

Although I would find an agreement for nonbinding arbitration enforceable to the extent that the parties would be required to arbitrate before litigating, I nevertheless would decline to enforce the particular agreement in case Nos. 91–764 and 91–1042 because the provision is unfair and unconscionable. Had the agreement incorporated some sense of parity in the positions of the parties by permitting a trial *de novo* for arbitration decisions that were

---

11. One feature that distinguishes binding from nonbinding arbitration is that the former results in an award while the latter does not.

unfavorable to the insured, I would not be as inclined to overturn what is otherwise a valid, arm's-length agreement.

A clause such as the one involved here is unconscionable when the determination of whether the arbitration is binding turns on an issue of causation or liability rather than the amount of damages. Take, for example, a case where the damages are conceded to exceed $200,000, but liability is disputed. Under the arbitration agreement at issue here, the carrier would never be bound by *any* decision in favor of the policyholder, because such a decision would result in a finding of damages exceeding the statutory minimum. On the other hand, the policyholder will *inevitably* be bound by a decision adverse to him, because the only way an arbitrator could award less than the statutory minimum is if there is a finding of no liability.[12] Thus, in such cases the carrier is never bound by an adverse decision, and the policyholder is always bound. This is "binding" arbitration for one party and "nonbinding" arbitration for the other. Such a provision is manifestly unfair and unconscionable and must not be enforced.

With respect to case Nos. 91–2105 and 91–2333, I reach a slightly different conclusion. Although the clause in that case is virtually identical to that involved in the first case, the portion of the arbitration agreement that I view as unconscionable is not directly in issue. Instead of striking the whole agreement, I would give effect to as much of the parties' intent as possible. Thus, I would permit a trial *de novo* by the insurer after arbitration, recognizing that at the core of the parties' agreement was an intention to enter into arbitration and to be bound by some arbitration outcomes and not be bound by others. Certainly, the arbitration outcome in that case was well beyond the statutory minimum and one that the parties would have expected to litigate. Binding the insurer to the arbitrators' decision under these facts is clearly not a proper remedy.

Unlike the plurality, I do not view agreements which provide for arbitration that is binding in part and nonbinding in part as contravening public policy. I also do not view such agreements as inherently unconscionable. Parties to

---

12. In case Nos. 91–764 and 91–1042, the arbitrators considered whether the injuries complained of by one of the insured were attributable to the automobile accident or to a preexisting condition. The arbitrators were thus faced with an issue of liability—whether the accident caused the injuries forming the greater portion of the claim against the policy. Their ruling, awarding essentially nominal damages to the insured, highlights the inequality of the parties' abilities to obtain a *de novo* review of the arbitration award. The inequality arises when there is great disparity between the damages awarded if total liability is found and the damages awarded (if any) when minimal or no liability is found. In that case, the expectations of the insurer and the insured as to the magnitude of the claims greatly diverge, and the arbitration provision becomes a "heads I win, tails you lose" proposition.

insurance contracts should be permitted to agree that some arbitration decisions will be binding and others will not, provided that one side is not given an unfair advantage over the other.[13]  Because mutuality does not exist when the clause is applied to the facts of the *Schaefer* case herein, and because binding the parties to the arbitration results is an inappropriate remedy in the *Fallon–Murphy* case at bar, I concur that each action must now proceed to trial.

### III

The zeal of the plurality to "make new law" is dangerous.  Each time this court chooses to ignore the questions certified by the courts of appeals and decides cases based upon issues neither raised by the parties nor considered by the courts below, we tread upon jurisprudential quicksand, and the more we thrash, the deeper we sink.  At the least, we must attempt to face the tough issues before us and not engage in judicial legislation.  When we do not meet the challenges directly before us, we confuse the law, and we give new meaning to the phrase "court of last resort."

Courts from several other states have examined the types of arbitration clauses at issue, concluding that they are against public policy and are thus unenforceable.[14]  We can and should do the same.

MOYER, C.J., and H. BROWN, J., concur in the foregoing opinion.

---

**13.**  Because I am neither an actuary nor a risk analyst, I cannot suggest where parties to an arbitration agreement should draw the line so that mutuality in the agreement exists.  As discussed *supra,* one must not draw the line in cases in which liability is an issue in such a manner that the arbitration becomes binding upon the insured and nonbinding upon the insurer.

Additionally, I believe that the provision in question would not be unconscionable in a case where liability or causation is undisputed but the amount of damages is not.  Certainly parties to an insurance contract could agree to be bound by arbitration results for cases involving a relatively small amount of damages.  A clause that provides that the arbitration will be binding only if certain arbitration outcomes occur, however, is more likely to fail under the law than a similar clause that binds the parties to the arbitration result only if the insured's demand against the policy is less than a certain minimum, or if the parties jointly believe that the damages are less than that minimum.  Indeed, a clause that, in effect, permits an arbitrator to determine whether his or her decision is binding is, in my view, inherently suspect.

**14.**  See, *e.g., Mendes v. Automobile Ins. Co. of Hartford* (1989), 212 Conn. 652, 563 A.2d 695; *Schmidt v. Midwest Family Mut. Ins. Co.* (Minn.1988), 426 N.W.2d 870; *Pepin v. American Universal Ins. Co.* (R.I.1988), 540 A.2d 21.  Accord *Field v. Liberty Mut. Ins. Co.* (D.Haw.1991), 769 F.Supp. 1135 (applying Hawaii law and finding arbitration clause void as against public policy).