[This opinion has been published in *Ohio Official Reports* at 81 Ohio St.3d 388.]

BRANHAM, APPELLEE AND CROSS-APPELLANT, *v*. CIGNA HEALTHCARE OF

OHIO, INC., APPELLANT AND CROSS-APPELLEE.

[Cite as *Branham v. CIGNA HealthCare of Ohio, Inc*., 1998-Ohio-615.]

*Contracts—Insurance—Determination of whether arbitration clause is binding.*

(No. 96-2137—Submitted December 9, 1997—Decided April 22, 1998.)

APPEAL from the Court of Appeals for Ross County, No. 95-CA-2156.

———————————

{¶ 1} The facts are given as stated in the complaint. Patty Branham, who is now deceased,[1] had health insurance with CIGNA HealthCare of Ohio, Inc. ("CIGNA") pursuant to a contract between CIGNA and the state of Ohio, the CIGNA HealthCare of Ohio, Inc. Columbus Group Service Agreement (the "Agreement"). In January 1993, Mrs. Branham was diagnosed with colon cancer. She received treatment, including surgery and chemotherapy, that was partially successful. The cancer metastasized to her liver, where it could not be removed surgically. Her doctors recommended that the tumors be treated with cryoablative surgery, a procedure that destroys tumors by freezing them.

{¶ 2} On January 12, 1995, Dr. E. Christopher Ellison, a specialist in cryoablative surgery, requested preapproval of the cryoablative surgery from CIGNA as a prerequisite to payment. On February 10, 1995, CIGNA notified Dr. Ellison that it was denying the request because cryoablative surgery was not a covered service, terming it "experimental and investigational." The complaint alleged "[u]pon information and belief" that CIGNA reached its decision without

---

1. After Mrs. Branham's death, her husband, Craig Branham, moved for substitution of parties. The court of appeals allowed the motion, and Mr. Branham substituted himself as the plaintiff on behalf of Mrs. Branham.

consulting anyone knowledgeable about cryoablative surgery or anyone specializing in oncology.

{¶ 3} In accordance with the grievance procedure set forth in the Agreement, Mrs. Branham appealed CIGNA's decision to the CIGNA Grievance Committee. CIGNA consulted with experts, who stated that "[c]ryosurgery is an accepted technique for destroying hepatic metastases" and that cryosurgery "conform[s] to acceptable medical standards." Nevertheless, the experts did not recommend approval of the procedure. On March 9, 1995, CIGNA denied Mrs. Branham's appeal. During the time it took CIGNA to process Dr. Ellison's request for preapproval and Mrs. Branham's appeal, the tumors in Mrs. Branham's liver doubled in size.

{¶ 4} On May 15, 1995, Mrs. Branham filed a complaint against CIGNA, alleging that CIGNA had breached the Agreement by failing to provide coverage for the requested cryoablative surgery. Mrs. Branham also asserted several other claims, including negligent and intentional infliction of emotional distress, negligent and intentional acts causing physical harm, and bad faith. Mr. Branham asserted a claim for loss of consortium.

{¶ 5} CIGNA moved to dismiss the action or in the alternative to stay it pending arbitration as required by the arbitration clause of the Agreement. While the motion was pending, Mrs. Branham died.

{¶ 6} On October 12, 1995, the trial court stayed the action pending arbitration of all claims, including Mr. Branham's loss-of-consortium claim. On appeal, the court of appeals reversed the stay as to Mr. Branham's loss-of-consortium claim while affirming the stay as to all claims brought on behalf of Mrs. Branham.[2] CIGNA appealed and Mr. Branham cross-appealed.

---

2. The claim for breach of insurance contract had not been appealed.

**{¶ 7}** The cause is now before this court pursuant to the allowance of a discretionary appeal and cross-appeal.

—————————————

*McCarthy, Palmer, Volkema, Boyd & Thomas* and *Tony C. Merry*, for appellee and cross-appellant.

*Arter & Hadden, Michael P. Mahoney* and *Nancy Manougian*, for appellant and cross-appellee.

—————————————

**PFEIFER, J.**

I

**{¶ 8}** The Agreement[3] contains an arbitration clause that states in part that "[a]ny controversy between GROUP, a Subscriber or Dependent (whether a minor or adult) or the heirs-at-law or personal representatives (including any of their agents, employees, or providers), arising out of or in connection with this Agreement shall, upon written notice by one party to another, be submitted to arbitration." The controversy before us requires a determination of whether the arbitration clause is binding. We see a patent ambiguity in the quoted contract provision and hold that Mr. Branham is not required to arbitrate either his claim for loss of consortium or the claims he brought on behalf of Mrs. Branham.

**{¶ 9}** The sentence states that controversies between "GROUP, a Subscriber or Dependent" are to be submitted to arbitration. The preposition "between" is lacking a second object. It is, therefore, not possible to determine what controversies are to be submitted to arbitration because it is not possible to determine what parties are to be in contention.

**{¶ 10}** In virtually every other section of the Agreement the word "HEALTHPLAN," defined as CIGNA, features prominently, informing the reader

---

3. We do not rule on the trial court's holding that Mrs. Branham impliedly agreed to the Agreement when she elected coverage by CIGNA and accepted benefits from CIGNA.

that CIGNA is a party to which the section applies. For example, the statement that certain subscribers "are eligible for Continuation Coverage if they have lost HEALTHPLAN membership eligibility" indicates the specific membership eligibility that may be lost, not some indeterminate membership eligibility. Section XI of the Agreement. Similarly, individuals must submit "a completed HEALTHPLAN enrollment application," not simply an enrollment application. Section VI of the Agreement. Such examples abound throughout the Agreement.

{¶ 11} We are uncertain whether the omission of "HEALTHPLAN" from the arbitration clause of Section XVI of the Agreement was inadvertent or intentional. Is it possible that the sentence lacks the word "and" after "GROUP," to give the sentence a reasonable meaning: that controversies between "GROUP" (the employer) and "Subscribers" (the employees) are to be submitted to arbitration? At the very least this sentence is ambiguous. As there cannot be a controversy "between" only one party, the sentence in the arbitration clause is also unintelligible.

{¶ 12} It is well settled that "[w]here provisions of a contract of insurance are reasonably susceptible of more than one interpretation, they will be construed strictly against the insurer and liberally in favor of the insured." *King v. Nationwide Ins. Co.* (1988), 35 Ohio St.3d 208, 519 N.E.2d 1380, syllabus. See *Hacker v. Dickman* (1996), 75 Ohio St.3d 118, 119, 661 N.E.2d 1005, 1006; *Fire Assn. of Philadelphia v. Agresta* (1926), 115 Ohio St. 426, 432-433, 154 N.E. 723, 725. Given the patent ambiguity of the sentence alleged to bind Mr. Branham to arbitration, we will construe it strictly against CIGNA and liberally in favor of Mr. Branham.[4] We conclude that the ambiguous sentence is unintelligible and cannot

---

4. While the law of this state favors arbitration, *Council of Smaller Enterprises*, *infra*, 80 Ohio St.3d at 666, 687 N.E.2d at 1356; *Schaefer v. Allstate Ins. Co.* (1992), 63 Ohio St.3d 708, 711-712, 590 N.E.2d 1242, 1245, not every arbitration clause is enforceable. R.C. 2711.01(A); *Schaefer*, 63 Ohio St.3d 708, 590 N.E.2d 1242.

bind Mr. Branham to submit controversies to arbitration. We reverse the judgment of the court of appeals as to the claims brought on behalf of Mrs. Branham.

## II

{¶ 13} Nothing in the record indicates that Mr. Branham expressly or impliedly agreed to the Agreement. Neither he nor Mrs. Branham signed anything binding him to the Agreement or the arbitration clause. " '[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.' " *Council of Smaller Enterprises v. Gates McDonald & Co.* (1998), 80 Ohio St.3d 661, 665, 687 N.E.2d 1352, 1355, quoting *AT & T Technologies, Inc. v. Communications Workers of Am.* (1986), 475 U.S. 643, 648-649, 106 S.Ct. 1415, 1418, 89 L.Ed.2d 648, 655. We conclude that Mr. Branham's loss-of-consortium claim is not subject to arbitration and affirm the court of appeals on that matter.

{¶ 14} Having addressed the issues before us on narrow grounds, we need not determine whether it violates public policy for an insurer to take two months to decide whether a woman battling for her life against cancer can have potentially life-saving surgery. That question and others involving what constitutes a meaningful answer in a timely fashion will have to wait for another day.

{¶ 15} For the reasons discussed above, we affirm in part and reverse in part and remand the cause to the trial court for further proceedings.

*Judgment affirmed in part*
*and reversed in part.*

DOUGLAS, RESNICK and F.E. SWEENEY, JJ., concur.

MOYER, C.J., COOK and LUNDBERG STRATTON, JJ., concur in Part I of the opinion and in the judgment.

––––––––––––––––––

**COOK, J., concurring in Part I of the opinion and in the judgment.**

{¶ 16} I concur in Part I of the majority opinion only. In Part I of its opinion, the majority demonstrates that the arbitration provision of the insurance contract at issue is insufficient to bind the parties to which it expressly applies (*i.e.*, GROUP, Subscriber, Dependent, and their heirs at law or personal representatives) to arbitrate their claims against CIGNA. Because CIGNA relies exclusively on this defective provision to bind Mr. Branham to arbitrate his loss-of-consortium claim as well as the claims that he pursues on behalf of Mrs. Branham, arbitration of none of the claims can be compelled. Accordingly, I agree with the majority's disposition of this case. I cannot, however, join in the dicta contained in Part II of the opinion suggesting that, without Mr. Branham's personal agreement to arbitrate, even a properly drafted arbitration provision would have been ineffective to require arbitration of his loss-of-consortium claim.

MOYER, C.J., and LUNDBERG STRATTON, J., concur in the foregoing opinion.

_____