DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
Raymond Foster appeals the orders of the Common Pleas Court of Summit County: (1) denying his motion to dismiss State Automobile Mutual Insurance Companies' ("State Auto") counterclaim which appealed an arbitration award and sought a trial de novo, (2) awarding summary judgment to State Auto on Foster's claims for breach of contract, fraud, and bad faith, and (3) dismissing Foster's claim for impotency damages. We affirm.
On July 1, 1987, Foster was involved in an automobile accident. He sustained injuries to his ankles, knees, wrists, and arm, and claimed that he was rendered impotent as a result of the accident. The tortfeasor was insured by State Farm Insurance Company under a policy that provided liability coverage of $100,000. Foster was insured by State Auto under a policy that provided underinsured motorist ("UIM") coverage of $500,000.
Foster brought a claim against the tortfeasor and State Farm, which he settled for $90,000. In 1993, Foster filed a UIM claim with State Auto. State Auto offered to settle the UIM claim for $10,000, but Foster rejected the offer and demanded arbitration. The arbitrators awarded Foster $400,000, subject to offset in the amount of Foster's settlement with the tortfeasor.
State Auto notified Foster of its intent to appeal the arbitration award. Before it filed its notice of appeal, however, Foster filed a complaint against State Auto in the common pleas court alleging breach of contract, fraud, violation of Ohio's Consumers Sales Practices Act, and bad faith. The first three claims stemmed from State Auto's decision to appeal the arbitration award. The fourth claim stemmed both from State Auto's intended appeal of the arbitration award and from State Auto's alleged refusal to make any effort to settle Foster's claim.
State Auto counterclaimed to appeal the arbitration award and for a trial de novo, and Foster moved to dismiss the counterclaim for failure to state a claim upon which relief could be granted. The trial court denied Foster's motion to dismiss, finding that the arbitration clause in the parties' policy of insurance was unenforceable and that State Auto was therefore entitled to try Foster's UIM claim.
State Auto then moved for summary judgment on Foster's claims of breach of contract, fraud, violation of the Consumers Sales Protection Act, and bad faith, arguing that on the basis of the trial court's prior ruling that the policy's arbitration clause was unenforceable, there existed no issues of material fact to be litigated with respect to the arbitration-related claims. With respect to the claim of bad faith stemming from State Auto's alleged refusal to engage in settlement negotiations with Foster, State Farm pointed to deposition testimony of Arthur Dobkin, the State Auto claims adjuster assigned to the Foster claim, as proof that it had made a settlement offer to Foster.
Foster moved in opposition to State Auto's motion for summary judgment, conceding "that the allegations set forth in its Complaint as it pertains to Ohio Consumer Practices Act does not properly apply to insurance contracts and, therefore, summary judgment as it pertains to that count would in fact be proper."
Prior to trial and before the trial court ruled on its summary judgment motion, State Auto notified Foster's counsel that it had scheduled a physical examination of Foster with a urologist specializing in sexual dysfunction. Foster refused to submit to the examination and moved for a protective order. The trial court overruled the motion, finding that State Auto was entitled to an independent medical examination of Foster and that the tests intended by the urologist could be used because they "would not be conducted as to injure or endanger [Foster]'s life or health."
When Foster continued to refuse to submit to the examination, State Auto moved to exclude Foster's impotency claim from trial, and the trial court granted the motion. The trial court also granted State Auto's motion for summary judgment on all four counts set forth in Foster's complaint, finding that: (1) both parties had conceded that summary judgment was appropriate as to the breach of contract and Consumers Sales Practices Act claims; (2) as a matter of law, Foster could not maintain an action for fraud because State Auto had a right to trial in the absence of an agreement between the parties for binding arbitration; and (3) in view of State Auto's offer to settle the claim and to resolve the claim through arbitration, there was no evidence of bad faith.
The case was tried to a jury, which awarded Foster damages in the amount of $200,000. The trial court reduced the award to $110,000 to offset the $90,000 settlement Foster had received from the tortfeasor.
Foster has appealed, asserting four assignments of error.
 I.
In his first assignment of error, Foster maintains that the trial court erred in overruling his motion to dismiss State Auto's counterclaim, thereby permitting a trial on the merits. Foster claims that, even if the arbitration clause in the policy was unenforceable, the parties otherwise made an agreement for binding arbitration.
In his second assignment of error, Foster asserts that the trial court erred when it granted summary judgment on the breach of contract and fraud counts of his complaint because genuine issues of material fact remained to be determined. Specifically, Foster alleges that Arthur Dobkin, the State Auto claims adjuster who handled his claim, knew that the arbitration provision was unenforceable, knew that Foster had financial problems and needed an expeditious resolution of his claim, and agreed to Foster's written demand for arbitration without rejecting or modifying the demand. Accordingly, Foster reasons, there remained a question of material fact as to whether the parties intended the arbitration to be binding. The crux of Foster's assignments of error is that the parties agreed to binding arbitration, and State Auto breached its contract and committed fraud by requesting a trial after agreeing to binding arbitration.
 A.
Before a trial court may dismiss a complaint for failure to state a claim upon which relief can be granted, "it must appear beyond doubt from the complaint that the plaintiff can prove no set of facts entitling him to recovery." O'Brien v. Univ.Community Tenants Union (1975), 42 Ohio St.2d 242, syllabus;Witcher v. Fairlawn (1996), 113 Ohio App.3d 214, 216.
In reviewing a trial court's entry of summary judgment, an appellate court applies the same standard used by the trial court.Fiorentino v. Lightning Rod Mut. Ins. Co. (1996), 114 Ohio App.3d 188,191. Pursuant to Civ.R. 56(C), summary judgment is not proper unless "(1) no genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing the evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the nonmoving party." State ex rel.Howard v. Ferreri (1994), 70 Ohio St.3d 587, 589. Doubts must be resolved in favor of the nonmoving party. Horton v. HardwickChem. Corp. (1995), 73 Ohio St.3d 679, 686.
A defendant moving for summary judgment bears the initial burden of informing the trial court of the basis for the motion and pointing to parts of the record that show the absence of a genuine issue of material fact on an essential element of the plaintiff's claim. Vahila v. Hall (1997), 77 Ohio St.3d 421, 429. The defendant must specifically point to some evidence of the type listed in Civ.R. 56(C) which affirmatively demonstrates that the plaintiff has no evidence to support his claims. Id.
 B.
The arbitration clause in the policy of insurance issued by State Auto to Foster provided that if the parties did not agree as to the amount of an insured's damages, either party could make a written demand for arbitration. The policy also provided:
 A decision agreed to by two of the arbitrators will be binding as to:
 1. Whether the "insured" is legally entitled to recover damages; and
 2. The amount of damages. This applies only if the amount does not exceed the minimum limit for bodily injury liability specified by the financial responsibility law of the state in which "your covered auto" is principally garaged. If the amount exceeds that limit, either party may demand the right to a trial. This demand must be made within 60 days of the arbitrators' decision. If this demand is not made, the amount of damages agreed to by the arbitrators will be binding.
In Schaefer v. Allstate Ins. Co. (1992), 63 Ohio St.3d 708,716, a three-judge plurality of the Ohio Supreme Court found that an arbitration provision substantially similar to the provision at issue in this case was unenforceable and did not provide for true arbitration because the arbitrators' award was not binding under all circumstances. The plurality further found that, to the extent the parties had engaged in an activity calling itself an "arbitration" in reliance on such a provision, "either party has the right to have the issues heard at a trial regardless of the amount of an award." Id. at 718. In such cases, a policyholder loses its "arbitration" award and is required to go to trial. Id.
A second three-judge plurality in Schaefer suggested that only the portion of the arbitration provision that rendered binding an arbitration award below the statutory minimum[1]
was unenforceable:
 Instead of striking the whole agreement, I would give effect to as much of the parties' intent as possible. Thus, I would permit a trial de novo by the insurer after arbitration, recognizing that at the core of the parties' agreement was an intention to enter into arbitration and to be bound by some arbitration outcomes and not be bound by others.
Id. at 722.
Because the arbitration award in this case was over the statutory minimum, under either opinion in Schaefer State Auto was entitled to a trial de novo on the issue of damages.
 C.
The record reveals that on April 26, 1993, Foster's counsel sent a letter to Arthur Dobkin of State Auto which stated:
 As we discussed, we hereby demand arbitration of the above captioned matter. We appoint * * * as arbitrator and ask that you appoint one[.]
Dobkin's deposition testimony was before the court on the motion for summary judgment. That testimony reveals that Foster's counsel and Dobkin had discussed the claim, Foster's counsel advised Dobkin that he was submitting the matter to arbitration, Dobkin did not respond to counsel's letter demanding arbitration, Dobkin forwarded counsel's letter to his supervisor, and Dobkin had no further involvement with the claim until Foster's counsel subpoenaed him to give a deposition. Dobkin was asked during his deposition whether he was familiar with the Schaefer v. Allstate
decision; and Dobkin, who is not a lawyer, answered that he was "probably somewhat aware."
Foster's counsel submitted his affidavit in opposition to State Auto's motion for summary judgment in which he stated "[t]hat I was led to believe from Mr. Dobkin that the arbitration which was being arranged would be a full and final settlement of this claim."
As part of his first two assignments of error, Foster maintains that an agreement for binding arbitration was formed by the parties outside the policy of insurance since Dobkin had some awareness of the Schaefer decision and since State Auto proceeded with arbitration despite Schaefer.
The argument raised by Foster was rejected by the Eighth District Court of Appeals in Kolcan v. W. Res. Mut. Cas. Co.
(Sept. 15, 1994), Cuy. App. Nos. 65582 and 65790, unreported, which held that a trial court may not affirm an arbitration award where the arbitration is not held pursuant to a binding written agreement:
 Finally, we note that an oral agreement to binding arbitration is unenforceable under Chapter 2711 of the revised code. See R.C. 2711.01 ("A provision in any written cont[r]act * * * or an agreement in writing to submit to arbitration any controversy * * * shall be valid * * *.") Similarly, an agreement to modify a written contract providing for non-binding arbitration to binding arbitration must also be in writing. Cf., Saba v. Homeland Ins. Co. (1931), 124 Ohio St. 79; Rosser v. Hockwalt (1967), 12 Ohio App.2d 129.
Dobkin's testimony establishes that State Auto never agreed in writing to binding arbitration of Foster's claim. Foster provided no evidence to dispute Dobkin's testimony. Under theKolcan reasoning, which we adopt, Foster's counsel's affidavit that he was "led to believe" that the arbitration would result in a final settlement of his claims is insufficient to establish an agreement for binding arbitration between the parties. See, also,Peoples v. Holloway (Dec. 3, 1985), Franklin App. No. 85AP-658, unreported. Accordingly, the trial court properly refused to dismiss State Auto's counterclaim for a trial de novo and correctly granted summary judgment for State Auto on Foster's breach of contract claim.
 D.
Foster's claim that the trial court erred in granting summary judgment for State Auto on his fraud claim is premised on Dobkin's possible knowledge that Schaefer had invalidated the arbitration provision of the insurance policy, State Auto's knowledge that Foster wanted an expeditious resolution of his claim, and State Auto's inducing Foster to believe that the parties were entering into binding arbitration.
"Fraud consists of six elements: a representation of a fact, which is material, made falsely — either with knowledge of its falsity or utter disregard and recklessness as to falsity — with an intent to mislead, with justifiable reliance thereupon, and a resulting injury." Tokles Son, Inc. v. Midwestern Indemn. Co.
(1992), 65 Ohio St.3d 621, 632.
The alleged material misrepresentation in this case centers on Foster's assertion that State Auto misled him as to the nature of the arbitration to which it consented. Foster maintains that the possible knowledge of Dobkin, a non-lawyer, about Schaefer
somehow misled his counsel into believing either that the arbitration clause in the policy: (1) was still valid despiteSchaefer; or (2) was invalid because of Schaefer, thus creating an enforceable contract of binding arbitration even in the absence of an unequivocal, written agreement to that effect.
The problem with this proposition is that, if the arbitration clause was still valid despite Schaefer, both Foster and State Auto were entitled under the provisions of the policy to a trialnotwithstanding the arbitration award. If the lead opinion inSchaefer is followed, thereby invalidating the entire arbitration provision, then Foster's argument requires: (1) imputing to non-lawyer Dobkin the knowledge that an oral agreement to arbitrate does not create a binding arbitration and (2) imputing to Foster's counsel a reasonable reliance on an alleged misrepresentation by Dobkin on a point of law: that binding arbitration could result from an oral agreement.
The only facts before the trial court in considering this issue were Foster's counsel's letter demanding "arbitration" but not "binding arbitration," Dobkin's deposition establishing that he never responded to the demand, and Foster's counsel's inference from conversations with Dobkin that the arbitration would be final. Since Dobkin could not orally create a contract for binding arbitration, State Auto effectively established that Foster could not prove that it made a material misleading statement on which Foster justifiably relied. Accordingly, the trial court properly granted summary judgment for State Auto on the fraud claim.
Foster's first and second assignments of error are overruled.
 II.
In his third assignment of error, Foster maintains that the trial court erred in granting summary judgment for State Auto on his claim of bad faith.
In his complaint, Foster alleged that State Auto "never made any good faith attempts to settle their insured's claim" and alleged that "no settlement offer was ever made." In its motion for summary judgment, State Auto cited Dobkin's deposition testimony which established that he had made a $10,000 settlement offer to Foster on behalf of State Auto in 1993, that Foster notified State Auto in November 1992 of his pending lawsuit against the tortfeasor, that in February 1993 Foster requested State Auto's consent to settle that lawsuit, and that in March 1993 Dobkin consented to that settlement.
It was only then that negotiations occurred between Dobkin and Foster's counsel regarding Foster's claim against State Auto for UIM coverage. Dobkin testified that he made the $10,000 settlement offer despite his belief that "a lot of" the damages claimed by Foster were not accident related and that State Auto needed more information "as to the causal relationship of the injuries." Foster rejected State Auto's offer and demanded arbitration, and State Auto acquiesced to that demand.
In his response in opposition to State Auto's motion for summary judgment, Foster argued that "[a]t the time Plaintiff's attorney had agreed [sic] to arbitrate the claim, he fully believed that this would be a full and final adjudication on the merits of this claim and was led to believe so by the actions and inactions in agreeing to set up an arbitration pursuant to the terms of the insurance contract." Foster attached his counsel's affidavit stating that he was "led to believe" by Dobkin that the arbitration would be a "full and final settlement" of the claim.
It is well settled that "[b]ased upon the relationship between an insurer and its insured, an insurer has the duty to act in good faith in the handling and payment of the claims of its insured. A breach of this duty will give rise to a cause of action in tort against the insurer." Hoskins v. Aetna Life Ins.Co. (1983), 6 Ohio St.3d 272, paragraph one of the syllabus. Mere refusal to pay a claim is not conclusive of an insurer's bad faith. Helmick v. Republic-Franklin Ins. Co. (1988), 39 Ohio St.3d 71, paragraph two of the syllabus. "An insurer fails to exercise good faith in the processing of a claim of its insured where its refusal to pay the claim is not predicated upon circumstances that furnish reasonable justification therefor."Zoppo v. Homestead Ins. Co. (1994), 71 Ohio St.3d 552, syllabus, certiorari denied (1995), 516 U.S. 809, 133 L.Ed.2d 20. To prevail on a claim of bad faith, the insured "must prove that the insurer's refusal to pay a claim was totally arbitrary and capricious." Spremulli's Am. Serv. v. Cincinnati Ins. Co. (1992),91 Ohio App.3d 317, 322.
Summary judgment is appropriately granted to the defendant on a claim of bad faith where the record is devoid of any evidence tending to show a lack of good faith on the part of the defendant.Labate v. Natl. City Corp. (1996), 113 Ohio App.3d 182, 190.
Dobkin's testimony refuted Foster's claim that no settlement offer was ever made by State Auto. Moreover, the record demonstrates that State Auto consented to Foster's settlement with the tortfeasor for an amount below the liability limits of the tortfeasor's insurance, that State Auto made an offer to settle Foster's UIM claim shortly after Foster settled with the tortfeasor, and that State Auto acquiesced in Foster's arbitration demand. Dobkin's testimony also established justification for its negotiation position; that is, its belief that many of Foster's claimed injuries were not caused by the automobile accident.
Foster offered nothing to refute State Auto's evidence that it had made efforts to settle the claim. Nor did Foster offer anything to refute State Auto's evidence of reasonable justification regarding settlement. The inference drawn by Foster's counsel from Dobkin's unspecified conduct — that State Auto was committing to binding arbitration "pursuant to the terms of the contract" — is without effect because under the terms of that contract no arbitration award in excess of $12,500 was binding on either party. Accordingly, the trial court properly granted summary judgment for State Auto on Foster's claim of bad faith.
Foster's third assignment of error is overruled.
 III.
In conjunction with his UIM claim for impotency damages, Foster provided State Auto with medical evidence produced by the parties to his liability action against the tortfeasor. State Auto was not a party to that litigation. The tortfeasor's expert had concluded that Foster was "probably impotent" but that further tests were needed for a conclusive determination.
Prior to the trial of Foster's UIM claim, State Auto notified Foster's counsel that it had scheduled a physical examination of Foster with a urologist specializing in sexual dysfunction. The tests to be conducted involved penile injection.
Foster refused to submit to the examination and moved for a protective order, claiming that the procedures intended were painful and "would endanger his life or health." In its response to Foster's motion for a protective order, State Auto requested that the court order Foster to undergo the proposed examination, arguing that the requested tests were necessary because: (1) none of the tests performed in the prior action were conclusive as to the source of Foster's impotency; (2) State Auto's expert stated that the complete battery of physical examinations he intended was the only way to determine the cause of Foster's impotency; and (3) State Auto was not a party to the prior action and was entitled to defend the claims against it.
The trial court overruled the motion for a protective order, finding that State Auto was entitled to an independent medical examination of Foster and that the tests intended by the urologist "would not be conducted as to injure or endanger [Foster]'s life or health."
After this ruling, Foster filed a "supplemental brief in support of motion for a protective order," in which he argued: (1) that the tests requested were unnecessary to a determination of whether he was impotent; and (2) that State Auto had failed to show that less-intrusive tests were not available to accomplish the same result.
State Auto replied to Foster's "supplemental brief," again requesting that the trial court order him to undergo the examination. It submitted a letter from the urologist it hired to conduct the examination which stated:
 In order to d[e]finitively determine if Mr. Foster is suffering from organic impotence caused by the motor vehicle accident, it would be necessary to obtain the following tests: 1 — repeat formal sleep study with N.P.T. for 3 nights; 2 — color flow Doppler examination of penile circulation with intracavernosal injection stimulation with a fasoactive substances; 3 — formal carvernosometry and cavernosography; 4 — pudenal arteriography.
The court again denied Foster's motion for a protective order, noting that it had previously ordered Foster to undergo the examination and finding that "Foster has failed to produce any evidence in the way of a medical opinion that this procedure is unnecessary to make a determination of whether Foster is in fact impotent, and that the impotence stems from the 1987 automobile accident."
When Foster continued to refuse to submit to the examination, State Auto moved to exclude Foster's impotency claim from trial, arguing that without the intended tests State Auto could not defend itself against Foster's claim. Foster did not respond to the motion to exclude, and the trial court granted the motion.
In his fourth assignment of error, Foster claims the trial court erred and abused its discretion in excluding from trial his claim for impotency damages. He claims that State Auto failed to provide evidence that the intended testing was "the only way" in which an impotency determination could be made. He also claims the trial court never ordered him to submit to the examination.
Civ.R. 35(A) governs orders for medical examinations and provides:
 When the mental or physical condition (including the blood group) of a party * * * is in controversy, the court in which the action is pending may order the party to submit himself to a physical or mental examination[.] * * * The order may be made only on motion for good cause shown and upon notice to the person to be examined and to all parties and shall specify the time, place, manner, conditions, and scope of the examination and the person or persons by whom it is to be made.
As to Foster's claim that the trial court never ordered him to submit to a physical examination, we note that in both of its responses to Foster's motions for a protective order State Auto requested that the trial court order Foster to undergo the examination requested. Foster's own motion included State Auto's letter to him detailing the time, place, manner, conditions, scope of the examination, and the name of the physician who would conduct the examination as required by Civ.R. 35(A). Although the trial court's first order denying the motion for a protective order did not clearly state that it was ordering Foster to undergo the examination, the second order clarified that Foster had been so ordered.
As to Foster's claim that the trial court erred in excluding the impotency claim from trial, we note that Foster never filed a response to State Auto's motion to exclude the impotency claim nor is there anything in the record demonstrating that Foster ever objected to the trial court's order to exclude. It is well settled in Ohio that, in civil cases, errors which arise during the course of the proceedings and are not brought to the attention of the trial court by objection at the time they could be remedied are waived and may not be reviewed on appeal. LeFort v. Century21-Maitland Realty Co. (1987), 32 Ohio St.3d 121, 123, Sheeler v.Ohio Bur. of Workers' Comp. (1994), 99 Ohio App.3d 443, 447. Accordingly, Foster may not raise this issue for the first time on appeal.
Foster's fourth assignment of error is overruled.
The decision of the trial court is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this court, directing the County of Summit Common Pleas Court to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
Costs taxed to appellant.
 Exceptions. _______________________________ WILLIAM R. BAIRD
FOR THE COURT
QUILLIN, J., P. J.
DICKINSON, J. CONCUR.
[1] In Ohio, the financial responsibility law requires coverage of at least $12,500 per person and $25,000 per accident. See R.C. 4509.01(K).