OPINION
{¶ 1} Impressions Building, LLC ("Impressions"), plaintiff-appellant, appeals from a judgment of the Franklin County Court of Common Pleas, in which the court granted summary judgment to Heart Specialists of Ohio, Inc. ("HSO"), defendant-appellee.
 {¶ 2} On February 14, 2003, HSO signed a lease agreement with Impressions to lease office space owned by Impressions. Under the terms, HSO would lease 20,511 square feet of total rentable space from June 1, 2003 to May 31, 2013. The agreement also provided for a Tenant Improvement Allowance ("TIA"), which indicated Impressions would provide HSO with a TIA of up to $40 per rentable square foot or up to $820,440. A contractor was approved by the parties, and Impressions' complaint indicates the build-out project was completed for $625,000. Approximately 2,400 square feet was left unfinished per the design specifications. HSO subsequently moved into the office space. Thereafter, HSO demanded that Impressions credit it the difference between the cost of the build-out, $625,000, and the total TIA cap, $820,440. Alternatively, HSO demanded that Impressions pay for any future improvements to the property desired by HSO until the $820,440 TIA limit was reached. Impressions refused, claiming it was obligated to use the TIA only for the initial build-out.
 {¶ 3} On February 2, 2004, Impressions filed a declaratory judgment action, requesting that the court declare that it did not owe HSO any credit or cash payment for the difference between the cost of the build-out and the TIA limit, and it was not required to pay for additional improvements until the $820,440 TIA limit was reached. On March 4, 2004, HSO filed an answer and counterclaim. On September 30, 2004, HSO filed a motion for summary judgment. On February 3, 2005, Impressions filed a motion for summary judgment. On February 21, 2006, the trial court granted HSO's motion for summary judgment. The trial court found that, although HSO was not entitled to any cash or credit for the difference between the cost of the build-out and the TIA cap, Impressions was required to pay for any future improvements over the life of the lease until the $820,440 TIA was exhausted. In its decision, the trial court addressed HSO's motion with respect to the first and second counts of the counterclaim, but it did not address HSO's third and fourth counts, in which HSO generally claimed the unused balance of the TIA had been computed incorrectly. The trial court found there was no just reason for delay, and Impressions appealed the judgment. After Impressions filed the instant appeal, HSO filed a motion to reactivate the case so the trial court could address the third and fourth counts of its counterclaim. On March 23, 2006, the trial court reactivated the case, but the parties subsequently filed an agreed order staying the matter until the conclusion of the appeal. In the current appeal of the trial court's judgment granting summary judgment to HSO, Impressions asserts the following assignment of error:
ASSIGNMENT OF ERROR NO. 1 — THE TRIAL COURT ERRED IN GRANTING APPELLEES' SUMMARY JUDGMENT MOTION.
 {¶ 4} Impressions argues in its sole assignment of error that the trial court erred in granting summary judgment to HSO. When reviewing a motion for summary judgment, courts must proceed cautiously and award summary judgment only when appropriate.Franks v. The Lima News (1996), 109 Ohio App.3d 408. Civ.R. 56(C) provides that, before summary judgment may be granted, it must be determined that: (1) no genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and, viewing the evidence most strongly in favor of the non-moving party, that conclusion is adverse to the non-moving party. Stateex rel. Howard v. Ferreri (1994), 70 Ohio St.3d 587, 589. When reviewing the judgment of the trial court, an appellate court reviews the case de novo. Franks, supra.
 {¶ 5} In the present case, the trial court found the language was unambiguous and provided HSO with a "fund" of $820,440 to make improvements on the leased property at any time during the lease. Generally, a trial court is required to presume that the intent of the parties to a contract resides in the language they chose to employ in the agreement. Kelly v. Med. Life Ins. Co.
(1987), 31 Ohio St.3d 130, paragraph one of the syllabus. "If a contract is clear and unambiguous, then its interpretation is a matter of law and there is no issue of fact to be determined."Inland Refuse Transfer Co. v. Browning-Ferris Industries ofOhio, Inc. (1984), 15 Ohio St.3d 321, 322. Thus, "where the terms in an existing contract are clear and unambiguous, th[e] court cannot in effect create a new contract by finding an intent not expressed in the clear language employed by the parties."Alexander v. Buckeye Pipe Line Co. (1978), 53 Ohio St.2d 241,246. A reviewing court should give the contract's language its plain and ordinary meaning unless some other meaning is evidenced within the document. Id.
 {¶ 6} After reviewing the terms of the lease agreement, although we agree with the trial court that the terms are unambiguous, we do not find they provided HSO with a fund of $820,440 to make improvements on the leased property at any time during the life of the lease. There is nothing in the terms of the contract that indicates such. To the contrary, the provisions of the contract contemplate only a single expenditure for one initial project. The main provision at issue provides:
2. Interior Alterations. The Landlord agrees to complete the Leased Premises in accordance with the list of interior alterations and improvements attached hereto on Exhibit "B", initialed and dated by Landlord and Tenant.
Exhibit B provides, in pertinent part:
The Owner will provide the Tenant with up to a $40.00 per rentable square foot tenant improvement allowance or up to $820,440. The tenant improvement allowance provided by the Owner shall not exceed $40.00 per rentable square foot. Any improvements in excess of $40.00 per rentable square foot shall be the sole responsibility of the Tenant. Owner and Tenant shall cooperate to competitively bid the project to up to three (3) general contractors. Owner and Tenant shall mutually agree upon the selected contractor.
 {¶ 7} Pursuant to paragraph 2, Impressions was responsible for only those interior alterations delineated in Exhibit B. The language of Exhibit B provides specifically that the TIA would be used for "the project," an unambiguous indication that the TIA was to be used for a single project to complete the initial build-out. Exhibit B also provided the guidelines for the bid process for "the project" and indicated HSO and Impressions must agree upon a single contractor, i.e., "the selected contractor." If the parties had intended to permit the TIA to be used for more than the initial build-out, they would not have used the singular terms "the project" and "the selected contractor," and they would have necessarily provided a bid process for any additional projects. That the contract is devoid of how the parties were to proceed with regard to requests from HSO for additional alterations and improvements under the TIA is telling. Likewise, Exhibit B fails to give any indication, either explicit or implicit, that HSO was entitled to the use of any amounts up to $820,440 not expended on "the project." As the contract does not award these "extra" amounts to HSO, they must necessarily be found to inure to the benefit of Impressions. A review of the remaining provisions of the contract fails to reveal any other language to contradict the above conclusions.
 {¶ 8} We find HSO's contrary arguments, as well as the trial court's converse conclusions, unconvincing. HSO argues that to accept Impressions' arguments would force the court to create an additional term to the lease that states the TIA is to be used for only one project or within a certain time frame other than the full term of the lease. We disagree. It is well-established that a court cannot add or change terms of the contract when the language is clear and unambiguous. Shifrin v. Forest City Ent.,Inc. (1992), 64 Ohio St.3d 635. However, our interpretation of the intent of the parties, in the present case, does not require the creation of additional contract terms. As found above, the lease provides, by its own terms, that the TIA was to be used for only one project, i.e., "the project." Further, that the TIA was to be used for only "the project," which was the initial build-out, necessarily supplies its own temporal limitations; that is, any funds from the TIA would be expended by the completion date of "the project." Thus, our above interpretation of the intent of the parties does not add any terms to the agreement and does not look beyond the clear language of the contract itself.
 {¶ 9} In addition, we find the trial court's findings untenable. HSO reasons, in support of the trial court's decision, that, because the agreement provides that the TIA is for the entire 20,511 square feet ($820,440/$40 per square foot = 20,511 square feet) and not just the 18,100 square feet that was finished by the initial build-out, the contract contemplated improvements to the entire area. However, we fail to see how this logic supports HSO's contention or the trial court's ultimate conclusion. We agree that the contract made the $820,440 available for use for the entire rentable area. However, HSO approved design plans that called for leaving 2,400 square rentable feet unfinished. The record does not indicate that HSO was precluded from finishing the entire space during the initial build-out, and it appears that HSO could have finished this area and used the TIA to do so. Thus, consistent with what HSO and the trial court contend, the TIA was, in fact, available to complete the entire rentable square footage; however, the terms of the contract permitted HSO to use the TIA only for a single initial project, and HSO failed to expend the entire TIA for that project. Although HSO may regret its decision to approve construction plans that did not include plans to finish the entire rentable area, a court may not rescue parties from their bad bargains or voluntary relinquishment of rights without a legal basis to do so. See Ervin v. Garner (1971),25 Ohio St.2d 231, 239-240. Thus, this argument is without merit.
 {¶ 10} The trial court also reasoned, and HSO concurs, that the language specifying that "[a]ny improvements" above the total would be the sole responsibility of the tenant demonstrated that the TIA could be used for more than one project. Again, we fail to see how this language supports the trial court's conclusion. This language merely provides that HSO could use the total TIA amount for the initial project, and, if the initial project cost more than $820,440, HSO would be responsible for such. Although we agree that the contract contemplates multiple improvements may be made, a plain reading of the passage upon which the trial court and HSO rely in no way advocates the interpretation that the TIA may be used for multiple improvements.
 {¶ 11} HSO also argues that paragraph 7 of the agreement provides further evidence that it was entitled to expend funds from the TIA after the initial build-out up to $820,440. Paragraph 7 permits HSO to make "alterations, additions, or improvements" as long as it obtains written consent from Impressions. Although we agree with HSO that the agreement, in this respect, contemplates that HSO may make alterations, additions, or improvements during the entire term of the lease, there is no indication that any portion of such alterations, additions, or improvements should be paid for from the TIA. Thus, we find paragraph 7 does not support HSO's interpretation of the parties' intent with regard to the use of the TIA.
 {¶ 12} HSO also points to the buy-out provision in paragraph 34 of the agreement and the buy-out amount of $187,000, which is the amount that HSO must pay to Impressions for the unamortized improvement costs that Impressions would be unable to recoup in years 11 through 15 of the lease if HSO fails to exercise its first renewal option. HSO argues that this buy-out provision demonstrates that HSO "would have access to a full tenant improvement allowance of $820,440." Again, there is nothing that prohibited HSO from having access to the full TIA funds for the initial construction. However, HSO approved plans that cost Impressions only $625,000. HSO failed to take advantage of the full amount. Thus, the buy-out provision does not aid HSO's claim.
 {¶ 13} For these reasons, we find the contract is not ambiguous, its interpretation is a matter of law, and no genuine issue of material fact remains as to whether the agreement provided HSO with a TIA of $820,440 to make improvements on the leased property at any time during the ten-year term of the lease. The lease agreement makes no provision for such, and the language in the agreement indicates the TIA was to be used for only a single build-out project. Therefore, Impressions' assignment of error is sustained. We also note that, because we have found the trial court erred in granting summary judgment to HSO, HSO's third and fourth counts of its counterclaim, the stay of which may or may not have been proper, are moot.
 {¶ 14} Accordingly, Impressions' single assignment of error is sustained, the judgment of the Franklin County Court of Common Pleas is reversed, and this matter is remanded to that court to issue a judgment denying HSO's motion for summary judgment and granting Impressions' motion for summary judgment.
Judgment reversed and cause remanded with instructions.
Bryant and French, JJ., concur.