DECISION AND JUDGMENT ENTRY
{¶ 1} This case is before the court on appeal from the judgment of the Lucas County Court of Common Pleas which denied the motion filed by appellant, Safety *Page 2 
National Casualty Corporation ("Safety National"), to refer the matter to arbitration and stay the proceedings. For the reasons that follow, we reverse the decision of the trial court.
 {¶ 2} On July 23, 2003, several insurance companies[1] filed a complaint for declaratory relief against Aeroquip-Vickers, Inc., Eaton Corporation, and Pilkington North America, Inc. (collectively referred to as "AVI/PNA"),[2] regarding insurance coverage for asbestos related liabilities. In October 2003, AVI/PNA filed answers and counterclaims against 20 insurance companies, including Safety National.[3] PNA filed an amended counterclaim on December 12, 2003. On January 9, 2004, Safety National filed separate answers to AVI/PNA's counterclaims and asserted as an affirmative defense that *Page 3 
"as a condition precedent to any right of action under its insurance, with the exception of commutation, any dispute arising out of the insurance shall be submitted to arbitration."
 {¶ 3} On April 8, 2004, the trial court entered "Case Management Order No. 1" ("CMO No. 1"), wherein the trial court set forth a number of case management procedures. In particular, the trial court ordered that discovery in the case would be separated into two phases. Phase I discovery issues concerned the existence, terms and conditions of policies; policy interpretation; choice of law; and the ability of AVI/PNA to seek coverage under the policies. Phase II discovery issues concerned matters relating to the underlying asbestos claims at issue, damages, and any remaining issues. All parties were given leave until 30 days after the close of Phase I to amend their pleadings to add additional insurance policies and/or join additional parties to the litigation. The parties were also given until 45 days prior to the close of Phase I to propound requests for admissions and interrogatories relating to Phase I issues.
 {¶ 4} In CMO No. 1, the trial court ordered mutual disclosure of certain written materials, including copies of insurance policies; unprivileged portions of underwriting files and claims files; and information concerning the impairment or exhaustion of any allegedly applicable limits of liability, including "per occurrence" limits and "aggregate" limits. Within 30 days after the policies were produced, the trial court ordered the parties to meet and confer in order to stipulate to the full and complete contents of each policy or to identify specific items of disagreement. *Page 4 
 {¶ 5} The trial court further ordered that the parties were permitted to depose a representative of any other party during the written discovery period regarding the efforts taken to comply with the deposing party's requests for production of documents, and fact depositions regarding Phase I issues. The trial court ordered that "[a] deposition noticed by one party will be deemed to have been noticed by all parties." All parties were entitled to be represented at depositions and inquire of a deponent; however, "failure on the part of any party to attend and inquire at any properly noticed deposition shall be deemed a waiver of such party's right to do so."
 {¶ 6} There is no evidence in the record regarding whether Safety National specifically asserted a desire to file counter or cross-claims; however, the trial court ordered in CMO No. 1 that "[a]ll counter and cross-claims for contribution, indemnification, and allocation between and among [AVI/PNA] and counterclaim defendants are deemed asserted, denied and stayed, including all such claims filed or served prior to entry of this order." If any party was found to have a duty to defend or indemnify another party, that party could "opt out of the stay imposed, * * * but only as between [the] respective parties."
 {¶ 7} Motions for summary judgment regarding Phase I discovery issues were permitted at any time, up to 45 days after Phase I discovery ended. Phase II discovery was ordered deferred until after the trial court decided any pending summary judgment motions relating to Phase I issues. *Page 5 
 {¶ 8} On March 14, 2005, the trial court entered its second "Case Management Order" ("CMO No. 2"), which extended the time for completing Phase I discovery until May 27, 2005; extended the time for any party to move for summary judgment on any Phase I issue until July 11, 2005; and extended the time for any party to amend its pleadings to add additional insurance policies and/or join additional parties to the litigation until June 27, 2005.
 {¶ 9} Safety National's participation in discovery was as follows. On May 7, 2004, the insurance carriers collectively submitted to AVI/PNA a joint set of request for production of documents and interrogatories. On June 14, 2004, in accordance with the CMO No. 1, Safety National provided copies of its insurance policies at issue; unprivileged portions of its underwriting files; and unprivileged portions of all claim files pertaining to the asbestos claims at issue. On August 16, 2004, Safety National filed its responses and objections to AVI/PNA's requests for admission, interrogatories, and document request. On March 1, 2005, Safety National finalized its stipulations with AVI/PNA, as it was ordered to do by the trial court in CMO No. 1. On March 24, 2005, Safety National served AVI/PNA with its first set of interrogatories and requests for production of documents. On April 29, 2005, Safety National noticed AVI/PNA for Civ.R. 30(B)(5) depositions regarding Phase I discovery issues, including the policy terms and conditions under which coverage was claimed, the deponent's interpretation thereof, and choice of law analysis. Safety National attended all but one of the 11 noticed *Page 6 
depositions and asked questions at six of them.[4] In July 2005, Safety National attended a multi-day mediation conference.
 {¶ 10} On July 29, 2005, a status pretrial was held. On August 8, 2005, the trial court entered a "Pretrial Order" wherein it ordered that "[a]ll motions for summary judgment on the issue of Occupational Disease shall be filed on or before September 9, 2005," with responses thereto being filed by September 30, 2005, and a hearing on October 20, 2005. The trial court also ordered that Phase I discovery "is hereby suspended until the resolution of the Motions for Summary Judgment on the issue of Occupational Disease."
 {¶ 11} On August 18, 2005, Safety National filed an "Application to Refer to Arbitration and Stay Proceedings," pursuant to R.C. 2711.02(B), requesting the trial court to compel AVI/PNA to arbitrate their claims against Safety National and to stay all *Page 7 
proceedings in this action as to Safety National until the arbitration proceedings concluded. On August 29, 2005, AVI/PNA moved for an extension of time to respond to Safety National's application, asserting that "[simultaneous briefing and argument on Safety National's request for arbitration and stay of the claims against it would distract from the summary judgment proceedings related to `Occupational Disease,' which [were] already underway, and therefore such briefing and argument should be deferred until after those proceedings [were] completed." AVI/PNA further asserted that "[t]he resolution of the summary judgment motions on the issue of `Occupational Disease' [would] likely have a substantial impact on AVI's and PNA's claims against Safety National" and, therefore, "it is necessary that Safety National be a participant in those proceedings and, at the very least, be bound by the court's rulings as to `Occupational Disease.'"
 {¶ 12} On September 9, 2005, Safety National replied to AVI/PNA's motion for extension of time, arguing that it had no reason to request arbitration earlier because no substantive issue had been raised regarding Safety National's rights and obligations under the Reimbursement Agreement[5] until the meaning of "Occupational Disease" became an issue. Safety National argued that if the trial court determined the meaning of "Occupational Disease", Safety National's right to have that issue decided by the arbitration panel would be impaired. Additionally, Safety National argued that any perceived delay in the development of the issues in this case was not attributable to *Page 8 
Safety National. Rather, Safety National was one of the many insurers "in limbo" until the July 11, 2005 mediation, having been brought "along for the ride" while the case was litigated between other parties. Safety National asserted that only towards the end of the mediation, when AVI/PNA decided that Safety National fell within a layer of liability coverage between major parties, did AVI/PNA show any real interest in Safety National. Further, Safety National asserted that "[i]f the Court approves the delay sought by AVI and PNA, then the very issue for which Safety National seeks arbitration, an interpretation of the Agreement, will be decided by the Court." Thus, "[a] delay in ruling on Safety National's Application would be exactly the same as a denial of the Application."
 {¶ 13} The trial court did not rule on Safety National's request for arbitration or AVI/PNA's motion for extension of time to respond to Safety National's request. Thus, on September 28, 2005, Safety National filed a motion for decision on its application, noting that it had been decisional since September 9, 2005.
 {¶ 14} On September 30, 2005, AVI/PNA opposed Safety National's application for arbitration and to stay proceedings on the bases that (1) the application is not decisional because AVI/PNA requested an extension to respond until the motions for partial summary judgment regarding occupational disease were decided; (2) "[o]nly one of the many Safety [National] policies at issue in this case" contains an arbitration clause and the remaining 13 years worth of policies do not contain mandatory arbitration clauses; (3) Safety National waited nearly two years to seek arbitration; (4) Safety *Page 9 
National was very involved with discovery, attending "all but one of the depositions taken in this case, even those involving other carriers," and several times being the only counsel attending, other than the counsel representing the witness; and (5) Safety National's "actions reflect that it has been well aware of its potential exposure in this case all along." AVI/PNA again requested that the court defer any remaining briefing on the arbitration issue until after resolving the summary judgment motions regarding "Occupational Disease."
 {¶ 15} Cross-motions for summary judgment were filed by OneBeacon America Insurance Company/Northern Assurance Company of America ("OneBeacon") and Allstate Insurance Company, formerly known as Northbrook Insurance Co. ("Northbrook"). On October 18, 2005, Safety National filed a "Notice of Disassociation from Co-Defendant's Cross-Motions for Summary Judgment." Safety National argued that the motions for partial summary judgment only concerned the meaning of "Occupational Disease" as that term appeared in Northbrook's and OneBeacon's policies and, thus, the decisions regarding these motions should "be limited in their effect and consequence, to just the three cross-movants/respondents." Safety National argued that it "should not be dragged into the fray merely because other defendants utilized Safety National's agreement language in an attempt to clarify or explain their own." Safety National asserted that it was entitled to arbitrate its entire dispute with AVI/PNA, and that by proceeding on the summary judgment motions, it may later be bound by the trial *Page 10 
court's determination of the meaning of "Occupational Disease," even though it desired to have the issue arbitrated in accordance with its policy.
 {¶ 16} On December 5, 2005, AVI/PNA moved for an extension of time until January 13, 2006, to respond to Safety National's application to refer the matter to arbitration and stay the proceedings against Safety National. On December 19, 2005, Safety National objected to this additional request for an extension of time to respond. On January 13, 2006, AVI/PNA filed its response, arguing that (1) Safety National waived its right to arbitrate by waiting two years to assert its right and by actively participating in litigation, such as serving discovery requests and notices for deposition, responding and objecting to discovery requests, attending depositions and asking questions, engaging in negotiations regarding policy stipulations, attending a four-day mediation conference in July 2005, and attending case management conferences and hearings before the trial court; (2) Safety National seeks to stay the action as to any claims against it pending arbitration, even though the arbitration language appears in only one of Safety National's policies with AVI/PNA; (3) the provision at issue contemplates non-binding arbitration which is not enforceable under the Ohio Arbitration Act; and (4) "a referral to arbitration even under the single policy would undermine, rather than serve, the efficiency goals of arbitration by having AVI's and PNA's claims against Safety [National] proceed in two different forums, resulting in nothing more than additional delay, especially because the arbitration panel's decision will be non-binding." *Page 11 
 {¶ 17} On January 30, 2006, Safety National filed an objection to AVI/PNA's "unauthorized and untimely filing of its response" to Safety National's request for arbitration and to stay the proceedings. Safety National requested that, if the trial court undertook to read AVI/PNA's response, it "be given written notice of that undertaking by the Court and an opportunity and time to reply to AVI/PNA's response and its voluminous exhibits (failing such written notice, Safety National will assume that no reply is necessary or desired by the Court)." On February 27, 2006, Safety National filed a "renewed objection to AVI/PNA's unauthorized and untimely filing of its response." Again, if the trial court was going to consider AVI/PNA's response, Safety National requested that the trial court "give Safety National written notice of its intention to take the response into consideration, and allow Safety National an opportunity and time (fourteen days) to reply to AVI/PNA's response."
 {¶ 18} Finally, on May 23, 2006, without granting Safety National leave to reply to AVI/PNA's January 13, 2006 memorandum in opposition, the trial court denied Safety National's August 18, 2005 application for referral to arbitration and to stay AVI/PNA's claims against it. The trial court made the following pertinent findings of fact:
 {¶ 19} "Safety National ignored its right to arbitration and proceeded to litigate this case through discovery, attending and participating in pretrial and in court hearings for nearly two years" and that Safety National was "physically present at all but one of the depositions taken for this case including those involving other insurance carriers." *Page 12 
 {¶ 20} "[U]pon seeing a potentially damaging ruling about to be made by the court on or about August 18, 2005, Safety National motioned to have their arbitration clause enforced."
 {¶ 21} "[B]y delaying their motion to stay and refer to arbitration until nearly two years had passed and by participating in pretrial litigation Safety National actions are consistent with an implicit waiver of their right to arbitration."
 {¶ 22} "The prejudice suffered by the other 28 parties involved with this case also weighs in favor of finding a waiver. These parties have invested two years worth of time and money litigating this action with Safety National. For them to turn around now and invoke their arbitration clause is extremely prejudicial."
 {¶ 23} On June 9, 2006, the trial court ruled on AVI/PNA's, OneBeacon's, and Northbrook's cross-motions for summary judgment regarding the meaning of the phrase "Occupational Disease." The trial court granted OneBeacon's and Northbrook's motions, finding that "the phrase `occupational disease' as used in all of the insurance contracts at issue here, be given its plain, ordinary and commonly accepted meaning," to wit "a sickness or illness contracted by an employee as a result of occupational exposure to conditions present in the nature of his/her employment or workplace, regardless of whether the employee seeks a remedy against his employer under a `statutory regime' or in tort." *Page 13 
 {¶ 24} On June 22, 2006, Safety National filed its notice of appeal regarding the trial court's May 23, 2006 denial of its application. Safety National raises the following sole assignment of error:
 {¶ 25} "The trial court erred in denying Safety National's Application for Referral to Arbitration and to Stay Proceedings, based upon its decision that Safety National waived its right to arbitration secured by the Reimbursement Agreement entered into with its opponents in this case."
 {¶ 26} The arbitration provision at issue herein is found in Safety National's Reimbursement Agreement, Policy No. SP-338-OH, effective April 1, 1985 through April 1, 1986, which states:
 {¶ 27} "O. Arbitration
 {¶ 28} "As a condition precedent to any right of action under this Agreement, with the exception of commutation, any dispute arising out of this Agreement shall be submitted to the decision of a board of arbitration. The board of arbitration will be composed of two arbitrators and an umpire, meeting in St. Louis, Missouri, unless otherwise agreed.
 {¶ 29} "* * *
 {¶ 30} "The board shall make its decision with regard to the custom and usage of the insurance and reinsurance business. The board shall issue its decision in writing based upon a hearing in which evidence may be introduced without following strict rules of evidence but in which cross examination and rebuttal shall be allowed. *Page 14 
 {¶ 31} "* * *
 {¶ 32} "Each party shall bear the expense of its own arbitrator and shall jointly and equally bear with the other party the expense of the umpire. The remaining costs of the arbitration proceedings shall be allocated by the board."
 {¶ 33} R.C. 2711.02(B) states "If any action is brought upon any issue referable to arbitration under an agreement in writing for arbitration, the court in which the action is pending, upon being satisfied that the issue involved in the action is referable to arbitration under an agreement in writing for arbitration, shall on application of one of the parties stay the trial of the action until the arbitration of the issue has been had in accordance with the agreement, provided the applicant for the stay is not in default in proceeding with arbitration."
 {¶ 34} As this court has previously held, "[arbitration is generally favored in Ohio because its purpose is `to avoid needless and expensive litigation.' Fairfield Eng. Co. v. Anchor Hocking Corp. (Apr. 10, 1986), 3d Dist. No. 9-84-37, quoting, Springfield v. Walker (1885),42 Ohio St. 543, 546." Buyer v. Long, 6th Dist. No. F-05-012, 2006-Ohio-472, ¶ 9. Like any other contractual right, however, the right to arbitrate may be implicitly waived. Id. at ¶ 11, citing Rock v. Merrill Lynch, Pierce,Fenner Smith, Inc. (1992), 79 Ohio App.3d 126, 128. "Waiver may attach where there is active participation in a lawsuit demonstrating an acquiescence to proceeding in a judicial forum." Id. at ¶ 13, citingAtkinson v. Dick Masheter Leasing II, Inc., 10th Dist. No. 01AP-1016, 2002-Ohio-4299; and Griffith v. Linton (1998), 130 Ohio App.3d 746, 751. "Nevertheless, a *Page 15 
waiver of the right to arbitrate is not to be lightly inferred." Id., citing Griffith, supra; and Harsco Corp. v. Crane Carrier Co. (1997),122 Ohio App.3d 406, 415.
 {¶ 35} "[T]he party asserting a waiver has the burden of proving * * * that (1) the waiving party knew of the existing right to arbitrate; and (2) the totality of the circumstances demonstrate the party acted inconsistently with the known right." Buyer at ¶ 11, citingAtkinson, supra, at ¶ 20. "There is no `talismatic formula' to determine if an implied waiver exists, and no one factor has controlling weight," but, "[w]hen considering the totality of the circumstances, a court may be guided by the following factors: (1) whether the party seeking arbitration invoked the jurisdiction of the court by filing a complaint, counterclaim, or third-party complaint without asking for a stay of the proceedings; (2) the delay, if any, by the party seeking arbitration to request a stay of the judicial proceedings, or an order compelling arbitration; (3) the extent to which the party seeking arbitration has participated in the litigation, including a determination of the status of discovery, dispositive motions, and the trial date; and (4) whether the nonmoving party would be prejudiced by the moving party's prior inconsistent actions." Buyer at ¶ 12-13, citing Atkinson, supra, at ¶ 21; and Baker-Henning Productions, Inc. v. Jaffe (Nov. 7, 2000), 10th Dist. No. 00AP-36.
 {¶ 36} The trial court's determination must be made on a case-by-case basis, considering and weighing all relevant factors in making its decision. Buyer at ¶ 13, citing Atkinson, supra, at ¶ 21. The standard of review for a decision to deny a motion to stay the proceedings pending arbitration is abuse of discretion. Buyer at ¶ 6; andHarsco *Page 16 Corp. v. Crane Carrier Co. (1997), 122 Ohio App.3d 406, 410. "Abuse of discretion" connotes more than an error of law or judgment; it implies that the court is unreasonable, arbitrary or unconscionable.Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219.
 {¶ 37} In this case, it is clear that Safety National was aware of its right to arbitrate because it pled its right as an affirmative defense in its answers. Safety National, however, did not file its application for referral to arbitration and to stay the proceedings against it until August 2005, 19 months after filing its answers. Thus, the issue on appeal is whether the trial court abused its discretion in finding that Safety National implicitly waived its right to arbitration, under the totality of the circumstances, by acting inconsistently with that known right.
 {¶ 38} With respect to the first factor we may consider, whether the party seeking arbitration invoked the jurisdiction of the court, AVI/PNA argues that, in CMO No. 1, Safety National was deemed to have asserted all counter and cross-claims for contribution, indemnification, and allocation between and among AVI/PNA and the counterclaim defendants. We, however, find that there is no evidence in the record regarding any desire on Safety National's part to file any counter or cross-claims. Certainly, no counter or cross-claims were asserted in or filed with its answers.
 {¶ 39} With respect to the second factor, the trial court held that Safety National's delay in requesting a stay of the judicial proceedings, or an order compelling arbitration, for "nearly two years" was "consistent with an implicit waiver of their right to *Page 17 
arbitration." We note, however, that the length of the delay alone is insufficient to impute waiver; rather, the totality of the circumstances must be considered.
 {¶ 40} In this case, there are over 28 parties and nearly 200 insurance policies in issue, which provide more than three decades of coverage for injuries alleged to have occurred prior to 1986. On August 18, 2005, when Safety National sought referral to arbitration and a stay of the proceedings against it, only five months had passed since Safety National finalized its stipulations with AVI/PNA regarding disputed policies; Phase I discovery was still pending,[6] but had been stayed pending the outcome of the motions for partial summary judgment regarding the meaning of "Occupational Disease," which were to be filed on September 9, 2005; until the discovery stay, parties were still permitted to propound requests for admissions and interrogatories regarding Phase I issues and were permitted to amend pleadings to add additional insurance policies and/or join additional parties to the litigation; Phase II discovery had not even begun; and no trial date had been set.
 {¶ 41} AVI/PNA argues that Safety National knew from the onset that it was denying coverage to AVI/PNA and, thus, could have invoked its right to arbitrate earlier. However, there is no evidence in the record that any issue regarding policy interpretation, potentially involving Safety National, had been definitively raised until the July 11, 2005 *Page 18 
mediation and July 29, 2005 pretrial conference. Thereafter, Safety National immediately requested a referral to arbitration and a stay of the proceedings against it. Given the large number of parties, the lengthy time span covered by the causes of action, and the voluminous nature of this litigation, we find that Safety National's delay was not unreasonable under the circumstances.
 {¶ 42} With respect to the third factor, the extent that Safety National participated in the litigation, the trial court held that Safety National attended and participated "in pretrial and in court hearings for nearly two years" and was "physically present at all but one of the depositions taken for this case including those involving other insurance carriers." Although true, upon a thorough review of the pertinent deposition transcripts, it is clear that Safety National only inquired of one deponent, Larry Karnes, on May 9, 2005, regarding its duties pursuant to specific policy language. Of the remaining five depositions, wherein counsel for Safety National inquired of the deponent, none of the questions specifically concerned interpretation of Safety National's policies.[7] Moreover, we note that the trial court ordered in CMO No. 1 that "failure on the part of any party to attend and inquire at any properly noticed deposition shall be deemed a waiver of such party's right to do so." Thus, Safety National's failure to participate in the depositions would have prohibited it from ever doing so. *Page 19 
 {¶ 43} Additionally, Safety National filed no dispositive motions[8]
and repeatedly declined to participate in the motions for partial summary judgment regarding the meaning of "Occupational Disease." We further find that the trial court's finding that "upon seeing a potentially damaging ruling about to be made by the court on or about August 18, 2005, Safety National motioned to have their arbitration clause enforced," is not supported by the record.
 {¶ 44} AVI/PNA argues that the facts in this case are similar to those in Phillips v. Lee Homes, Inc. (Feb. 17, 1994), 8th Dist. No. 64353, wherein the court held that the right to arbitrate had been waived based upon the party's two-year delay in filing a motion to stay pursuant to R.C. 2711.02, and participation in discovery and case management conferences. We, however, find the facts in Phillips distinguish it from this case.
 {¶ 45} In Phillips, the party seeking enforcement of its arbitration right delayed three years, after the inception of the lawsuit, to move for a stay of proceedings; had asserted various counterclaims against the complainant and sought leave to file a third-party complaint against seven subcontractors, thus invoking the jurisdiction of the trial court; had conducted extensive discovery, including taking depositions, exchanging expert reports, and responding to written discovery; and had filed dispositive motions. Also, the trial date was set for two months from the time the stay was sought, and the *Page 20 
case was "fully ready for trial." In contrast, Safety National filed no counter or cross-claims, except as "deemed" filed by the trial court; filed no dispositive motions; and, given the complexity of the case, engaged in limited discovery regarding the claims against it. Additionally, there was no scheduled trial date, discovery was not complete, and additional parties and claims were still allowed to be added. Unlike Phillips, this case did not stand "ready for trial," by any means.
 {¶ 46} With respect to the fourth factor, "whether the nonmoving party would be prejudiced by the moving party's prior inconsistent actions," we find that the trial court's finding of prejudice also is not supported by the record. The trial court held that the 28 parties involved would be "extremely" prejudiced if Safety National were permitted to arbitrate with AVI/PNA because "two years worth of time and money" had been invested "litigating this action with Safety National." We, however, find that Safety National is not seeking a stay of the entire proceedings, only the claims pending against it. Additionally, given the fact that the policies in issue all cover periods prior to 1986, it is not likely that the discovery already completed would become stale or outdated. Further, there is no greater likelihood that parties would have to repeat depositions and discovery, done while AVI/PNA's claims against Safety National are being arbitrated, then there would have been if Safety National had sought a stay in January 2004. Accordingly, we find no basis for the trial court's finding of prejudice.
 {¶ 47} Based on the totality of the circumstances, we find that Safety National invoked its right to arbitrate, and moved for a stay, within a reasonable time and that the *Page 21 
trial court's determination that Safety National waived its right, by participating in the litigation for "nearly two years," was unreasonable, arbitrary, and not supported by the record. AVI/PNA, however, additionally argues that the trial court's decision denying Safety National's application for referral to arbitration and to stay the proceedings should be affirmed because the provision at issue is unenforceable under the Ohio Arbitration Act.
 {¶ 48} In particular, AVI/PNA cites Schaefer v. Allstate Ins. Co.
(1992), 63 Ohio St.3d 708, 711, wherein the Ohio Supreme Court held that "[f]or a dispute resolution procedure to be classified as `arbitration,' the decision rendered must be final, binding and without any qualification or condition as to the finality of an award whether or not agreed to by the parties." In Schaefer, the policy stated that if the parties could not agree on a settlement amount, then the matter would go to arbitration; however, the provision also stated that if "any arbitration award exceeds the Financial Responsibility limits of the State of Ohio, either party has a right to trial on all issues in a court of competent jurisdiction." Id. at 715, fn 8. Having found that the clause in the Schaefer policy "is not a provision providing for true arbitration," the Ohio Supreme Court held that "the entire agreement to `arbitrate' clause is unenforceable." Schaefer at 717. Thus, any award rendered pursuant to a nonbinding "arbitration" clause could not be enforced and either party would be entitled to have the dispute decided by a court of competent jurisdiction.
 {¶ 49} With respect to this argument, we initially find that Safety National was not given an opportunity to respond because this issue was raised in AVI/PNA's untimely *Page 22 
response, filed January 13, 2006. Nonetheless, we find that AVI/PNA's argument is without merit. The issue in Schaefer was the enforceability of the arbitrators' award, not whether the parties were entitled to have the matter referred for arbitration in the first instance. In this case, whether the arbitration provision in the policy provides for a binding resolution is not dispositive of whether Safety National is permitted to have the matter referred to a board of arbitration. The parties clearly agreed to have any dispute arising under the terms of the policy submitted to a board of arbitration as a condition precedent to "any right of action." The parties contracted for such a right and we find that the trial court abused its discretion by not enforcing the terms of the policy.
 {¶ 50} Upon consideration whereof, we find Safety National's sole assignment of error well-taken. This court finds that substantial justice has not been done the party complaining and the judgment of the Lucas County Court of Common Pleas denying Safety National's application for referral to arbitration and for stay is reversed. This matter is remanded to the trial court for further proceedings in accordance with this decision. AVI/PNA is ordered to pay the costs of this appeal pursuant to App.R. 24. Judgment for the clerk's expense incurred in preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Lucas County.
 JUDGMENT REVERSED. *Page 23 
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4.
Peter M. Handwork, J., Arlene Singer, J., Thomas J. Osowik, J., CONCUR.
[1] The plaintiffs in this action are: Travelers Casualty and Surety Company, formerly known as The Aetna Casualty and Surety Company; The Travelers Indemnity Company; Liberty Mutual Insurance Company; Employers Insurance of Wausau; OneBeacon America Insurance Company, formerly known as Commercial Union Insurance Company (on its own behalf and as successor to Employers Liability Assurance Corporation, Ltd.); and Northern Assurance Company of America (as successor to certain liabilities of Employers Surplus Lines Insurance Company).
[2] Plaintiffs alleged in their complaint that prior to 1986, Libbey-Owens-Ford Company manufactured and sold glass products as an unincorporated business. In 1986, the Libbey-Owens-Ford Company transferred virtually all of its assets and liabilities of its glass operations into LOF Glass, Inc. Pilkington Brothers PLC then acquired substantially all of the stock of LOF Glass, Inc., and acquired the exclusive right to use the name Libbey-Owens-Ford Company. Thus, in 1986, LOF Glass, Inc. changed its name to Libbey-Owens-Ford Company, which was later changed to Pilkington North America, Inc. The original Libbey-Owens-Ford Company, which had contracted for insurance with the plaintiff insurers, changed its name to Trinova Corporation, and then to Aeroquip-Vickers, Inc.
[3] Safety National and the other insurance companies are collectively referred to by the trial court as "counterclaim defendants."
[4] On April 27, 2005, counsel for Safety National inquired of William Ammann for 53 pages of transcript regarding the issue of choice of law, specifically, his bases for believing Ohio law would apply to the underlying action. On May 2, 2005, counsel for Safety National inquired of Gary Findling for less than a page regarding whether he had ever reviewed any of Safety National's agreements, which he had not. On May 9, 2005, counsel for Safety National inquired of Larry Karnes for 46 pages of transcript regarding any contacts he had with Safety National since 1977 when insurance coverage was first purchased by LOF through Safety National, and his understanding of certain insurance terms and procedures. On May 12, 2005, counsel for Safety National hosted the deposition of Gerald Smith and initiated a call to the trial court regarding a dispute that had arisen during the deposition. Counsel was clearly not the party involved in the dispute at Smith's deposition, but did attempt to synthesize the arguments for the trial court. On May 17, 2005, counsel for Safety National inquired of Bruce Helberg for less than a page regarding whether he had ever reviewed any of Safety National's agreements, which he had not. On May 20, 2005, counsel for Safety National inquired of William Rose for ten pages of transcript regarding worker's compensation claims, in general.
[5] Policy No. SP-338-OH, effective April 1, 1985 through April 1, 1986.
[6] CMO No. 2 had extended the time for discovery of Phase I issues until May 27, 2005; however, on August 8, 2005, the trial court ordered that Phase I discovery "is hereby suspended until the resolution of the Motions for Summary Judgment on the issue of Occupational Disease." We, therefore, conclude that Phase I discovery was still proceeding in August 2005.
[7] For instance, counsel generally inquired of William Ammann, on April 27, 2005, regarding choice of law, and of William Rose, on May 20, 2005, regarding worker's compensation claims.
[8] Safety National, however, did file objections to AVI/PNA's discovery requests. 19.
 *Page 1