[Cite as *Reissland v. Sage Park Alzheimer's Special Care Ctr.*, 2025-Ohio-5153.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

|  |  |  |  |
|---|---|---|---|
| Gaibrelle Reissland, individually and as Executor for the Estate of Marilyn Reissland, deceased, | : | | |
| | : | | |
| | : | No. 24AP-641 | |
| Plaintiff-Appellee, | : | (C.P.C. No. 22CV-9021) | |
| | | | |
| v. | : | (REGULAR CALENDAR) | |
| | | | |
| Sage Park Alzheimer's Special Care Center c/o Statutory Agent Gahanna Care Group, LLC et al., | : | | |
| | : | | |
| Defendants-Appellants. | : | | |

D E C I S I O N

Rendered on November 13, 2025

**On brief:** *Rinehardt Law*, *John K. Rinehardt*, *Melanie S. Fahey*, and *Rachel A. Rinehardt*, for appellee. **Argued:** *Rachel A. Rinehardt.*

**On brief:** *Reminger Co.*, *L.P.A.*, and *Melvin J. Davis*, for appellants. **Argued:** *Marissa Kuryla.*

APPEAL from the Franklin County Court of Common Pleas

LELAND, J.

{¶ 1} Defendants-appellants Gahanna Care Group, LLC d.b.a. Sage Park Alzheimer's Special Care Center ("Gahanna Care"), Atim Njie Marrinette, Kyle Rushing, and Kadeidra Dixon (collectively "appellants") challenge a decision of the Franklin County Court of Common Pleas denying their motion to stay the trial court proceedings and compel arbitration.

**I. Facts and Procedural History**

{¶ 2} In December 2020, Marilyn Reissland ("Marilyn") signed a residency agreement as part of her admission to Gahanna Care. Plaintiff-appellee Gaibrelle Reissland ("appellee") signed the same residency agreement as Marilyn's guarantor. The residency agreement included a mandatory arbitration provision.

{¶ 3} Marilyn died July 22, 2022. On December 27, 2022, appellee filed a complaint, in her individual capacity and as executor of Marilyn's estate, asserting claims of wrongful death and survivorship against Gahanna Care and one of its employees. The complaint referred to this employee only as "John Doe" and claimed appellee was unable to discover his identity. Also on December 27, 2022, appellee moved to extend the deadline to file an affidavit of merit under Civ.R. 10. On January 30, 2023, the trial court granted the motion and provided an additional 90 days for appellee to file an affidavit of merit.

{¶ 4} On March 2, 2023, Gahanna Care filed its answer to the complaint and a motion to stay discovery beyond the production of medical records until appellee filed an affidavit of merit. The court granted this limited motion to stay discovery on March 9, 2023. On April 24, 2023, appellee filed an affidavit of merit. On May 10, 2023, Gahanna Care moved for judgment on the pleadings arguing appellee failed to comply with Civ.R. 10(D)(2). On May 23, 2023, appellee filed a memorandum in opposition to the motion for judgment on the pleadings, or, in the alternative, a request for a 60-day leave to cure the affidavit of merit. On June 13, 2023, after the court granted a motion for an extension of time, Gahanna Care filed a reply in support of its motion for judgment on the pleadings.

{¶ 5} On June 22, 2023, appellee moved for leave to file an amended complaint and the trial court granted that motion on June 26, 2023. The court deemed appellee's amended complaint filed as of June 22, 2023. The amended complaint named Gahanna Care, Marrinette, Rushing, and Dixon as defendants and asserted additional causes of action. On July 14, 2023, appellants moved to dismiss the amended complaint for failure to comply with Civ.R. 10(D)(2), claiming appellee filed an insufficient affidavit of merit. On July 28, 2023, appellee filed a memorandum opposing the motion to dismiss. On August 7, 2023, appellants filed a reply in support of the motion. On October 24, 2023, the court denied the motion for judgment on the pleadings and the motion to dismiss the amended

complaint, finding no affidavit of merit was required after all because the amended complaint did not allege medical claims.

{¶ 6} On October 30, 2023, appellants filed an answer to the amended complaint. On December 7, 2023, appellants moved to stay the proceedings and compel arbitration under the residency agreement's arbitration clause. On December 15, 2023, appellee filed a memorandum in opposition, explaining that under paragraph 16(D) of the residency agreement, appellants waived their right to arbitrate by failing to compel arbitration within 90 days of the filing of appellee's complaint and by actively participating in the litigation for nearly one year. On December 27, 2023, appellants filed a reply in support of their motion to stay proceedings and compel arbitration.

{¶ 7} On October 1, 2024, the trial court denied appellants' motion to stay the proceedings and compel arbitration. The court concluded paragraph 16(D) of the residency agreement imposed a 90-day deadline to compel arbitration from the time of the filing of a complaint. The court thus held appellants waived their right to arbitrate under the residency agreement because they failed to compel arbitration within 90 days of appellee's complaint or amended complaint.

{¶ 8} Appellants timely appealed.

## II. Assignment of Error

{¶ 9} Appellants assign the following error for our review:

> The trial court erred by denying Appellants' motion to compel arbitration based upon a finding Appellants waived arbitration by not filing their motion to compel within 90 days after the filing of the Appellee's Complaint.

## III. Discussion

{¶ 10} Appellants' sole assignment of error contends the trial court erred in finding appellants waived their right to arbitrate.

{¶ 11} Under R.C. 2711.02(B), a party may enforce a written arbitration agreement by filing a motion to stay court proceedings. Our standard of review of a trial court order deciding on such a motion varies based on the "nature of the issues raised on appeal." *Crosscut Capital, L.L.C. v. DeWitt*, 2021-Ohio-1827, ¶ 14 (10th Dist.). If the primary issue turns on the interpretation of a contract, our review is de novo. *Id.* If, on the other hand, the primary issue turns on a factual analysis of whether a party waived the right to arbitrate,

we review for an abuse of discretion. *Id.* Here, because the issue raised on appeal depends solely on the interpretation of the residency agreement, we review de novo the trial court's decision denying appellants' motion to compel arbitration.

{¶ 12} Paragraph 16 of the residency agreement contains an arbitration clause, entitled "MANDATORY ARBITRATION." (Ex. B.) In relevant part, it states "ALL DISPUTES AND LEGAL CLAIMS BETWEEN YOU (INCLUDING YOUR REPRESENTATIVES, SUCCESSORS AND ASSIGNS) AND US (INCLUDING THE COMMUNITY'S EMPLOYEES, AGENTS, SUNSHINE AND THE MANAGER) THAT ARISE UNDER OR RELATE TO THIS AGREEMENT MUST BE RESOLVED THROUGH FINAL AND BINDING ARBITRATION." Paragraph 16(A). It continues: "YOU UNDERSTAND AND ACKNOWLEDGE THAT, BY AGREEING TO BINDING ARBITRATION, YOU WAIVE YOUR RIGHT TO SUBMIT ANY DISPUTE WITH US FOR DETERMINATION BY A COURT AND THEREBY ALSO WAIVE THE RIGHT TO A JURY OR COURT TRIAL." (Emphasis in original.) Both appellee, as Marilyn's guarantor, and the manager of Gahanna Care signed their initials under this mandatory arbitration section. Paragraph 16(D) adds:

> If either party overlooks the obligation to arbitrate disputes and participate in litigating the matter in the court system, neither party will be deemed to have waived the right to compel arbitration if a motion to compel arbitration or demand for arbitration described in Section 16C above is filed and served within 90 days after the complaint setting forth the allegations was filed with the court.

{¶ 13} The trial court concluded paragraph 16(D) required the parties to seek arbitration within 90 days of the filing of a complaint. Appellants failed to meet this deadline, so the court found they waived their right to arbitrate.

{¶ 14} We review de novo the trial court's interpretation of paragraph 16(D). *DeWitt*, 2021-Ohio-1827, at ¶ 14 (10th Dist.). Our interpretation of a contract aims to "give effect to the intent of the parties, which is presumed to rest in the language the parties chose to employ." *Mulvey v. GuideOne Mut. Ins. Co.*, 2017-Ohio-7902, ¶ 15 (10th Dist.). We interpret contract terms by their plain and ordinary meaning. *Nationwide Life Ins. Co. v. Canton*, 2010-Ohio-4088, ¶ 21 (10th Dist.). "[I]f the contract is not reasonably susceptible to more than one meaning, then extrinsic evidence is not permitted and the contract is

enforced as written." *Colbur Tech, L.L.C. v. Zerco Sys. Internatl., Inc.*, 2010-Ohio-4318, ¶ 28 (7th Dist.). Finally, courts should not by their interpretation render any provision of a contract meaningless. *Transtar Elec. v. A.E.M. Elec. Servs. Corp.*, 2014-Ohio-3095.

{¶ 15} Here, we find no error in the trial court's interpretation of the residency agreement. The mandatory arbitration provision, absent one exception not relevant here, broadly requires the parties to arbitrate all disputes that arise under the agreement. Paragraph 16(D) notes a party does not waive the right to arbitrate "if a motion to compel arbitration . . . is filed and served within 90 days after the complaint setting forth the allegation was filed with the court." The plain and ordinary implication of this provision is a party *does* waive the right to arbitrate if it fails to file and serve a motion to compel arbitration within 90 days of the filing of the complaint. If the 90-day limit was interpreted as something other than a deadline, and either party was already free under the contract to compel arbitration before, during, or after the 90-day period, it is natural to wonder what purpose Gahanna Care had in mind when it drafted a time-constrained protection of the right to arbitrate. The plausible explanation is that Gahanna Care intended the natural reading of paragraph 16(D): a party participating in the litigation for more than 90 days after the filing of the complaint—without filing a motion to compel arbitration—waives the right to resolve the matter through arbitration. In fact, if paragraph 16(D) was interpreted as nothing more than a 90-day window preserving the right to arbitrate, the entire paragraph would be redundant because the residency agreement already contains expansive arbitration provisions. As we have already noted, we aim to avoid interpretations that render any term of a contract superfluous. *See Transtar Elec.*

{¶ 16} While paragraph 16(D) is unambiguous, the context of arbitration may artificially muddy this provision's meaning. Imagine a similar contract term in another setting. A hypothetical rental agreement states "a tenant's rental payment will not be deemed late if payment is made within three days of the first day of each month." Any reasonable tenant would understand this means rent is due within three days of the first day of each month. Even though this rental agreement is technically silent on whether rent is considered late after the third day of each month, the payment provision is not ambiguous because it is not "reasonably susceptible to more than one meaning." *Colbur Tech.* at ¶ 28. It would not be reasonable to interpret this rental agreement as lacking a

rental payment deadline—if the day was not meant to serve as a deadline, it is difficult to comprehend why the landlord would have mentioned the third day of the month at all. Of course, a rent provision differs substantively from paragraph 16(D) of the residency agreement at issue here. Both, however, employ the same interpretive logic. In each scenario, the intent of the parties to set a deadline—after which any rational signatory would expect consequences like a late fee or waiver of the right to arbitrate—is apparent from the language of the agreements. We thus read the present residency agreement in accord with the mutual intent of the parties in establishing a 90-day deadline to file a motion to compel arbitration, and a contractual waiver of the right to arbitrate disputes beyond the 90 days. Finally, having determined the unambiguous intent of the parties as expressed in the residency agreement, we disregard all extrinsic evidence, including the public policy preference in favor of arbitration. *See Whitley v. Canton City School Dist. Bd. of Edn.*, 38 Ohio St.3d 300, 301 (1988) ("[W]here the terms of a contract are clear and unambiguous, extrinsic evidence may not be used as an aid in interpretation."); *Gudorf Law Group, L.L.C. v. Brannon*, 2019-Ohio-3529, ¶ 11 (2d Dist.) (explaining that when a contract is clear and unambiguous, a court may not consider extrinsic evidence or apply principles of construction to vary the contract's terms).

{¶ 17} Accordingly, because we find the trial court did not err in denying appellants' motion to compel arbitration, we overrule the sole assignment of error.

## IV. Conclusion

{¶ 18} Having overruled appellants' sole assignment of error, we affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

MENTEL, J., concurs.
DORRIAN, J., dissents.

DORRIAN, J., dissenting.

{¶ 19} The majority concludes that the trial court did not err by denying appellants' motion to compel arbitration because appellants waived the right to arbitrate by failing to seek arbitration within 90 days after the complaint was filed. Because I would not interpret the arbitration provision at issue in this case to create an automatic waiver after 90 days, I respectfully dissent.

**A. Applicable law governing arbitration**

{¶ 20} "[T]he Ohio General Assembly and Ohio courts have expressed a strong public policy favoring arbitration." *Hayes v. Oakridge Home*, 2009-Ohio-2054, ¶ 15. R.C. 2711.01(A) provides that, with limited exceptions, a provision in a written contract "to settle by arbitration a controversy that subsequently arises out of the contract . . . shall be valid, irrevocable, and enforceable, except upon grounds that exist at law or in equity for the revocation of any contract." "In light of the strong presumption favoring arbitration, all doubts should be resolved in its favor." *Hayes* at ¶ 15. A party wishing to enforce a written arbitration agreement may seek a stay of court proceedings when an issue raised in those proceedings is subject to the arbitration agreement:

> If any action is brought upon any issue referable to arbitration under an agreement in writing for arbitration, the court in which the action is pending, upon being satisfied that the issue involved in the action is referable to arbitration under an agreement in writing for arbitration, shall on application of one of the parties stay the trial of the action until the arbitration of the issue has been had in accordance with the agreement, provided the applicant for the stay is not in default in proceeding with arbitration.

R.C. 2711.02(B).

{¶ 21} Notwithstanding the public policy favoring arbitration, a contractual right to arbitrate may be waived. *Crosscut Capital, L.L.C. v. DeWitt*, 2021-Ohio-1827, ¶ 12 (10th Dist.). A party asserting waiver of a right to arbitrate bears the burden of proof and must demonstrate that (1) the waiving party knew of the right to arbitrate and (2) under the totality of the circumstances, the waiving party acted inconsistently with the right to arbitrate. *Id.* at ¶ 12-13. When determining whether a party acted inconsistently with the right to arbitrate, a court may consider all relevant factors including " '(1) whether the party seeking arbitration invoked the court's jurisdiction by filing a complaint or claim without first requesting a stay; (2) the delay, if any, by the party seeking arbitration to request a stay; (3) the extent to which the party seeking arbitration has participated in the litigation; and (4) whether prior inconsistent acts by the party seeking arbitration would prejudice the non-moving party.' " *Id.* at ¶ 13, quoting *Morris v. Morris*, 2010-Ohio-4750, ¶ 18 (10th Dist.). Given the public policy favoring arbitration, a court should not lightly infer a waiver of a right to arbitrate. *DeWitt* at ¶ 12. *See Janssen v. Fluent Solar, L.L.C.*, 2024-Ohio-1697,

¶ 13 (10th Dist.) ("To be sure, a determination that a contractual right to arbitrate has been waived should not be done so lightly."); *Griffith v. Linton*, 130 Ohio App.3d 746, 751 (10th Dist. 1998) ("Waiver of the right to arbitrate is not to be lightly inferred.").

### B. The arbitration provision of the residency agreement

{¶ 22} As relevant to this appeal, the arbitration provision set forth in the residency agreement contained the following terms:

> 16. MANDATORY ARBITRATION
>
> A. ALL DISPUTES AND LEGAL CLAIMS BETWEEN YOU (INCLUDING YOUR REPRESENTATIVES, SUCCESSORS AND ASSIGNS) AND US (INCLUDING THE COMMUNITY'S EMPLOYEES, AGENTS, SUNSHINE AND THE MANAGER) THAT ARISE UNDER OR RELATE TO THIS AGREEMENT MUST BE RESOLVED THROUGH FINAL AND BINDING ARBITRATION AS PROVIDED BELOW, EXCEPT THAT WE RESERVE THE RIGHT TO SEEK PROVISIONAL REMEDIES (SUCH AS EVICTION) BY COURT PROCEEDING. YOU UNDERSTAND THAT YOU WILL BE BOUND BY THE RESULT FROM SUCH ARBITRATION. YOU ACKNOWLEDGE THAT YOUR MONTHLY CHARGE HAS BEEN ESTABLISHED, IN PART, IN RELIANCE ON THIS SECTION. YOU UNDERSTAND AND ACKNOWLEDGE THAT, BY AGREEING TO BINDING ARBITRATION, YOU WAIVE YOUR RIGHT TO SUBMIT ANY DISPUTE WITH US FOR DETERMINATION BY A COURT AND THEREBY ALSO WAIVE THE RIGHT TO A JURY OR COURT TRIAL.
>
> [The preceding paragraph was initialed by appellee as guarantor and by the manager of the facility.]
>
> B. This agreement to arbitrate disputes arising under or relating to this Agreement includes claims for personal injury or property damage, and applies to all disputes or legal claims for breach of contract, tort, breach of statutory duties, or based on any other legal theory, whether currently existing or arising in the future, other than any action for eviction.
>
> C. The parties specifically agree to the following:
>
> • If a dispute arises (other than eviction), either party may send to the other party a demand for arbitration, which must be hand-delivered or sent via Registered or Certified Mail, Return Receipt Requested.

. . .

> D. If either party overlooks the obligation to arbitrate disputes and participate in litigating the matter in the court system, neither party will be deemed to have waived the right to compel arbitration if a motion to compel arbitration or demand for arbitration described in Section 16C above is filed and served within 90 days after the complaint setting forth the allegations was filed with the court.

(Emphasis in original.) (Residency Agreement, Defs.' Ex. B, attached to Dec. 7, 2023 Mot. to Stay Proceedings & Compel Arbitration.)

### C. The trial court's interpretation of paragraph 16(D) of the residency agreement

{¶ 23} The trial court concluded that paragraph 16(D) of the residency agreement required the parties to seek arbitration within 90 days of the filing of a complaint and that appellants' failure to do so constituted waiver of the right to arbitrate:

> The language of the arbitration clause in the Residency Agreement is clear. Either party, if they wish to compel arbitration, must do so within 90 days of the filing of a complaint. Here Defendants did not invoke this section of the agreement until well after 90 days had passed from the filing of either the original complaint or the amended complaint. As such, from the plain reading of the Residency Agreement, it appears that Defendants waived their rights to arbitration.

(Oct. 1 2024 Decision & Order at 2.) The majority finds the trial court did not err in this analysis and would affirm the trial court's conclusion.

{¶ 24} The arbitration provision set forth in paragraph 16(A) is broad and requires the parties to arbitrate all disputes and legal claims arising under or relating to the residency agreement, with a limited exception for provisional remedies such as eviction. The language of paragraph 16(D) implicitly acknowledges that the right to demand arbitration under paragraph 16(A) can be waived by participating in litigation. As explained above, under the common law, courts apply a multifactor test when determining whether a right to arbitrate has been waived. On its face, paragraph 16(D) defines a specific duration when a party will *not* be deemed to have waived the right to arbitrate by participating in litigation—i.e., for 90 days after a complaint is filed. Contrary to the trial court's conclusion, however, the plain language of paragraph 16(D) does not address whether a party's

participation in litigation for more than 90 days would constitute a waiver of the right to arbitrate. "It is well-established that a court cannot add or change terms of [a] contract when the language is clear and unambiguous." *Impressions Bldg., L.L.C. v. Heart Specialists of Ohio, Inc.*, 2006-Ohio-4719, ¶ 8 (10th Dist.). Because paragraph 16(D) is silent as to whether participating in litigation for more than 90 days after a complaint is filed would be deemed a waiver of the right to arbitrate, the multifactor common law test would govern in that scenario.

{¶ 25} Under the trial court's interpretation of paragraph 16(D), and the majority's affirming of the same, no waiver of the right to arbitrate would occur if a party participated in litigation but filed a motion to compel arbitration within 90 days of the complaint being filed. However, if the party participated in litigation and filed a motion to compel arbitration 91 days after the complaint was filed, the party would *automatically* waive the right to arbitrate. Interpreting paragraph 16(D) to create an implied automatic waiver of the right to arbitrate after 90 days of litigation is inconsistent with the broad arbitration provision set forth in paragraph 16(A) of the residency agreement. Such an interpretation also is inconsistent with public policy in favor of arbitration and the presumption that all doubts should be resolved in favor of arbitration. *See Hayes*, 2009-Ohio-2054, at ¶ 15.

{¶ 26} Appellee argues that rejecting the trial court's interpretation of paragraph 16(D) would render that provision meaningless. Rather than meaningless, however, I would find that paragraph 16(D) is simply inapplicable to the facts in this case. By its own terms, paragraph 16(D) provides that when litigation is filed and a party participates for up to 90 days before filing a motion to compel, that party will not be deemed to have waived the right to arbitrate. Paragraph 16(D) is silent as to what occurs when, as in this case, litigation is filed and a party participates in that litigation for more than 90 days before filing a motion to compel. Nevertheless, the majority finds that the "plain and ordinary implication of this provision is a party does waive the right to arbitrate if it fails to file and serve a motion to compel arbitration within 90 days of the filing of the complaint." (Majority Decision at ¶ 15.) I cannot agree. Rather than implying that an automatic waiver occurs in those circumstances, I would conclude that the multifactor common law waiver analysis would apply and a trial court would need to consider whether, under the totality of

the circumstances, the allegedly waiving party acted inconsistently with the right to arbitrate.

{¶ 27} Therefore, I would conclude the trial court erred by holding that appellants waived their right to arbitrate solely by virtue of failing to file a motion to compel within 90 days of the complaint being filed.

### D. The multifactor common law waiver analysis

{¶ 28} Although I would conclude that appellants did not automatically waive their right to arbitrate pursuant to paragraph 16(D) by failing to file a motion to compel within 90 days of the complaint, that would not end the waiver analysis. As explained above, when determining whether a party has waived the right to arbitrate, courts apply a multifactor common law test to determine whether, under the totality of the circumstances, the party alleged to have waived acted inconsistently with the right to arbitrate. *DeWitt*, 2021-Ohio-1827, at ¶ 12-13 (10th Dist.). This is a fact-intensive analysis to be made by the trial court in the first instance. *See Debois, Inc. v. Guy*, 2020-Ohio-4989, ¶ 22 (8th Dist.) ("The trial court is in the best position to determine whether a party has waived its right to arbitrate."); *Murtha v. Ravines of McNaughton Condominium Assn.*, 2010-Ohio-1325, ¶ 24 (10th Dist.) ("Appellate review acknowledges the discretion vested in trial courts in determining whether a party has waived the right to arbitration."); *Travelers Cas. & Sur. Co. v. Aeroquip-Vickers, Inc.*, 2007-Ohio-5305, ¶ 36 (6th Dist.) ("The trial court's determination [of whether the right to arbitrate has been waived] must be made on a case-by-case basis, considering and weighing all relevant factors in making its decision."); *First Fin. Savs. v. H.L.B. Corp.*, 1988 Ohio App. LEXIS 340, *7 (1st Dist. Feb. 3, 1988) ("The question of whether appellant, by its conduct in the court below, waived its right to arbitration is a determination to be made in the first instance by the trial court."). Then, on appeal, the court would review for abuse of discretion the trial court's determination of whether a waiver occurred. *DeWitt* at ¶ 15; *Janssen*, 2024-Ohio-1697, at ¶ 9 (10th Dist.).

{¶ 29} In this case, because the trial court found that a waiver had occurred under paragraph 16(D), it did not conduct the multifactor common law analysis to determine whether appellants had acted inconsistently with the right to arbitrate under the totality of the circumstances. Because the trial court failed to undertake the multifactor common law analysis, I would remand this matter to the trial court to conduct that analysis.

**E. Conclusion**

{¶ 30} Because I would conclude the trial court erred by ruling that appellants waived their right to arbitrate pursuant to paragraph 16(D) by failing to file a motion to compel arbitration within 90 days after the complaint was filed, I would sustain appellants' sole assignment of error and reverse the trial court's decision.[1] I also would remand to the trial court so that it could perform the multifactor common law analysis in the first instance to determine whether appellants waived their right to arbitrate. Because the majority reaches a different conclusion, I respectfully dissent.

---

[1] I note that appellee also argues for the first time on appeal that the arbitration provision in the residency agreement is unenforceable because it does not comply with the requirements of R.C. 2711.23. The majority did not address this argument and neither do I. Generally, courts will not address issues raised for the first time on appeal. *See Premiere Radio Networks*, *Inc. v. Sandblast*, *L.P.*, 2019-Ohio-4015, ¶ 7 (10th Dist.) ("Issues raised for the first time on appeal are deemed to have been waived or forfeited through failure to assert them before the trial court."). Moreover, R.C. 2711.23 applies only to arbitration agreements between patients and hospitals or healthcare providers for controversies involving medical, dental, chiropractic, or optometric claims that are entered into prior to the patient receiving any care, diagnosis, or treatment. R.C. 2711.23; *Zellner v. Prestige Gardens Rehab. & Nursing Ctr.*, 2019-Ohio-595, ¶ 26 (3d Dist.). In this case, the trial court determined that appellee's complaint did not allege a medical claim and no party has appealed that determination. Therefore, I would decline to address appellee's argument that the arbitration provision of the residency agreement is unenforceable.